New-York, May, 1840.—McPherson v. Cheadell.

------------------

## McPherson vs. Cheadell.

A *physician* may maintain an action for services rendered by him in his profession.

Whether he can maintain such action without producing a *diploma*, or a *license* granted by a medical society, after a compliance with the first act of the legislature upon the subject, *quere.*

The effect of the several acts of the legislature *regulating the practice of physic and surgery* upon the rights of physicians, considered and commented upon.

The supreme court, on writ of error removing a record from the common pleas, will not look into a *special report* made by references to the common pleas containing only the *evidence of the facts* transpiring upon the hearing, and the decisions made in the admission and rejection of testimony, and upon questions of law arising in the course of the hearing.

On the refusal of a *court of common pleas* to set aside a *report of referees* for alleged errors in the hearing of the cause, if the loosing party desires to review in the supreme court the decision of the common pleas, he must procure a *statement of facts*, not the *evidence of the facts*, to be drawn up under the direction of the common pleas and placed upon the re-
[ *16 ] cord *in the form of a special report in the nature of a *special verdict* or *bill of exceptions*.

Error from the Montgomery common pleas. Cheadell sued McPherson in 1837, in an action of *assumpsit*, for services rendered as a *physician*, and for medicines furnished from 1803 until 1836. The defendant pleaded the *general issue* and the *statute of limitations.* The cause was heard by reference, and in the record brought up to this court there was incorporated a *special report* of the referees made to the court below, in which the referees certify that " The following is a statement of the proofs and objections, &c." They then proceed and state the names of the witnesses called by the plaintiff below, with the particular matters to which they testified, as nearly, probably, as might be in the language of the witnesses.

To show the plaintiff's right to practice as a physician, his counsel produced the following instruments : " State of New-York, Montgomery County Medical Society, [L. S.] This may certify that Elijah Cheadell is a le-

gal attending member of said society. In testimony whereof, we have hereunto affixed the seal of the same, this 16th day of October, A. D. 1806. By order of said society. Alexander Sheldon, president. Stephen Reynolds, secretary." " State of New-York, Montgomery County Medical Society, [L. S.] This may certify that Elijah Cheadell, of Johnstown, is a legal attending member of society. In testimony whereof we here affix the seal of the same, this 11th day of October, A. D. 1820. By order of the society. Samuel Maxwell, president. Oran Johnston, secretary." The admission of these instruments being objected to as insufficient, because they were neither licenses nor diplomas, and on various other grounds, the referees received them, saying they should not hold them sufficient, unless the *diploma* of the plaintiff should be produced. Accordingly, in the progress of the plaintiff's evidence, his counsel produced an exemplification, made by the Montgomery county clerk, of a paper which he claimed to be a license in the words and *figures following : " This may certify that [ *17 ] sufficient evidence hath been produced to me that Elijah Cheadell, of Johnstown, county of Montgomery, state of New-York, hath been regularly educated in and practiced physic and surgery and midwifery, for more than two yaers last past ; and do hereby allow the same to be recorded. Given under my hand and seal, this 19th day of September, 1797. Simon Veeder. [L. S.] Filed 20th September, 1797." The exemplification was under the seal of the Montgomery county court, and attested in the usual form, in the name of the first judge. The defendant's counsel objected that this was not competent evidence, nor was it a license or diploma, authorizing the plaintiff to practice under the statute of this state. But the referees received it. It was also proved by *parol*, though this was objected to, that the plaintiff has been for 25 years an attending member of the Montgomery county Medical Society. It farther appeared that the plaintiff had been in general practice as a phy-sician during the whole time embraced by his account current ; and for forty years before the hearing. This testimony was received after objection taken, that the plaintiff could not show himself a physician except by a diploma or license.

The references farther certified that the plaintiff produced his account books, and they set forth in full the evidence given to verify them, with an exact copy of the charges. It was objected that the plaintiff's accounts were barred by the statute of limitations. But to this the referees answered they would hear the evidence on both sides, and reserve their opinion until their final decision.

The defendant's testimony was also detailed in the report. Much of it was intended to impeach the general accuracy or honesty of the plaintiff's account books. This was in turn sought to be repelled by witnesses who

were sworn for the plaintiff. All the evidence intended for these various purposes was minutely set forth as it was given on both sides. The defendant disavowed any claim of credit or set off.

The referees reported that they found the plaintiff's accounts, [ *18 ] as proved, to amount in the whole to $125 ; that *they found his books to be fair ; that they allowed the credits in his books, which they stated were interspersed among his charges, and amounted to $48,73 ; and concluded, that if the court should be of opinion under the circumstances that the statute of limitations did not attach, they found for the plaintiff $76,27, being the balance after deducting the credit ; but that if the court should be of opinion that the statute did attach, they found for the plaintiff $37,94, being the amount proved to have accrued within six years before suit brought. Again : if the court should be of opinion that the objection was well taken that the proof did not show the plaintiff was licensed, and it was necessary for him to prove himself licensed, then they found for the defendant ; and again : in case the court should be of opinion that the plaintiff was entitled to recover the whole of his account, without the deduction of any part of the credit by him given, then the referees reported in favor of the plaintiff $125 : all of which, they added, was submitted subject to the opinion of the court on the several questions thus raised.

The common pleas rendered judgment for the plaintiff for $76,27, with costs. The defendant sued out a writ of error.

*M. T. Reynolds*, for the plaintiff in error, insisted that there was no legal evidence that the plaintiff below was a *physician*, and that the plea of the *statute of limitations*, at all events, limited the right to recover to $37,94.

*D. Cady*, for the defendant in error, contended that this court could not notice any of the evidence spread out upon the record ; that it should have been put in the form of a special verdict or bill of exceptions to enable them to do so ; and that in all other respects the judgement below was correct.

*By the Court*, COWEN, J. A preliminary point taken by the counsel for the defendant in error is, that we have no right to notice any of the testimony entered on the record. By the 2 *R. S.* 306, 2*d ed.* § 48, the court ordering the reference may require the referees to report their decision [ *19 ] in admitting or rejecting any witness, in allowing or disallowing *a question to or answer by a witness, and all other proceedings by the referees, with the testimony before them, and their reasons for allowing or disallowing any claim of either party. The report in question was, in these respects, sufficient for the purposes of the court below ; and it warranted the judgment which they rendered, unless the report be exceptionable in some other respects.

New-York, May, 1840.—McPherson v. Cheadell.

But, on error, it is not so drawn as to present any of the questions which were raised before the referees. In regard to these, where the question is intended to be made on facts properly in evidence, the court below must cause a report as of the referees, to be drawn up and entered upon the record stating the facts (not the evidence of the facts) found by them, and the questions of law arising upon such facts must appear to have been passed upon by the court. The questions so passed upon then come before us substantially in the same way, and are dealt with upon the same principles, as if the judgment below had been founded on a special verdict. The report is said to be in nature of a special verdict. *Feeter* v. *Heath*, 11 *Wendell*, 477, 481 ; *Melvin* v. *Leaycraft*, 17 *id.* 169. If the question come here upon a point of law, in admitting or denying evidence at the hearing, it must also appear to have been presented to the referees, and finally passed upon by the court, with the same pointed exactness as we require in a bill of exceptions. This must also appear by a report, speaking in the name of the referees, to be framed by the court below and entered upon the record ; and it is then said, by the cases before cited, to be in the nature of a bill of exceptions. We will not say that an exception must be taken and entered on the record in terms, as is required where the objection is raised at a jury trial. The statute allowing exceptions is not strictly predicable of a hearing before referees. But in both cases, whether the question came up on facts found, or on rejecting or admitting evidence, it must appear that the court below (not merely the referees, but the court itself,) has passed upon the question sought to be raised here. The only substantial difference is, that the report of referees may combine the double character of a special verdict and bill *of exceptions. *The People* v. *The Superior* [ *20 ] *Court of the City of N. Y.*, 20 *Wendell*, 663.

In this case, it may be said that the court below must necessarily have held that the testimony showing that the plaintiff below had a license was sufficient. The answer is, that the facts going to make out the license are not stated as facts found, but only the evidence of them is given ; for instance, the exemplification is stated to have been produced, and certain oral and other proof received tending, as supposed, to make out a license. Again, the court may have determined that it was not necessary to prove a license. If it be said that certain parts of the evidence tending to show a license were objected to, but received by the referees, it is impossible to say what part was viewed as competent by the court, or whether they held that no proof was necessary beyond the fact that the plaintiff was retained and acted as the defendant's physician. The referees left it for the court to decide whether a license was proved, if such proof were necessary. This left the question to the court below, thus : Was the evidence sufficient to show a license ? If not, was there evidence enough to conclude the defendant, with-

out the formal proof of a license ?   Again : was the evidence sufficient, in either view, to sustain the whole or any part of the plaintiff's claim ?   The fatal objection is, that these may have been all questions on the weight of the evidence.   Neither the referees nor the court tell us whether they allowed and acted on the written or oral evidence.   The former received some of both after objection made, but the court do not tell us whether they considered it properly received or not.   They had the power to say that though improperly heard, it could do no harm, for there was enough of lawful proof without it.   So far, it is impossible to see that the court decided a single question of law.

Then, as to another point taken by the defendant, viz. that the credits entered by the plaintiff within the six years would not take the case out of the statute of limitations, the court decided nothing in terms.   The referees submitted to them whether the statute attached or not, under the cir-

[ *21 ]   cumstances.   The court decided simply that the plaintiff should *recover a certain sum.   We may infer that they allowed the credit against the plaintiff, and held that these took the case out of the statute ; but they might have proceeded on other grounds.   Neither the dates nor other particulars as to the credits are set forth.   Beside, I do not see that the point was made before the referees that these credits could not be allowed as taking the case out of the statute.   Had it been raised, perhaps the objection might have called out farther proof.

It is enough, however, to say that a writ of error does not go to the referees, any more than to a jury ; it lies for error of the court below only, apparent on the record itself.   To allow a writ of error at all from a decision on a report of referees, is an anomaly.   It is no where expressly given by statute, nor is the method of making the report a part of the record prescribed by the statute.   A special verdict was always a part of the record.   A bill of exceptions was made so virtually by statute.   It is only in analogy to a special verdict, or, if you please, under the equity of the rule which allows a special verdict, and the equity of the statute allowing a bill, that a report can be made any part of the record.   If it do not, therefore, present neat points of law, appearing to have been expressly or necessarily decided by the court, the whole is impertinent, and must be disregarded.   It is not on the record for the purposes of error, as was held in *Denning* v. *Smith*, 2 *Wendell*, 303, 306.   If there be no point of law decided upon the report, the court below ought to disallow any entry on the record beyond what belongs to it by the common law.   If there be a point of law, they must, in the name of the referees, find and enter facts, or rather conclusions of fact alone, raising the question of law, saying they have decided it expressly, or putting it in such a posture and relation upon the record, that the question plainly appears to be involved in the judgment rendered.   The substance of all I have

said on this subject, will be found to have been said heretofore by the chancellor in *Feeter* v. *Heath*, before cited, which was a case in the court of errors. The rule cannot be departed from in the least without entirely disregarding the nature and office of a writ of error.

*But if the evidence be all considered as stricken out, there is [ *22 ] a defect in the record itself, which leaves it quite doubtful whether the judgment can be sustained. I allude to the form of the general report. This is an essential part of the record. The referees are required by 2 *R. S.* 305. 2d ed. § 43, to hear and *determine* the matter in controversy. By *id.* 306, § 48, they may be compelled to report the *amount they find due to either party;* and by *id.* § 49, if the report be confirmed, judgment shall be entered thereon in the same manner and with like effect as upon the *verdict* of a jury. The general report must, therefore, by statute, and indeed in the nature of things, be entered like a general verdict ; and thus it becomes examinable on error. Now in the case at bar, the referees did not report *any amount* as definitely due to the plaintiff. They merely stated the evidence to the court below, subject to their opinion, in four different aspects. They say, if the court are of a certain opinion on the facts, then they find one sum ; if of another opinion, then a different sum ; if of a third opinion, still another sum ; and, if of a fourth opinion, they find for the defendant. And the court gave judgment for the plaintiff, after finding that one out of the four hypotheses proposed, was true. The report determines nothing except upon a contingency ; whereas the statute requires the referees generally to *determine* and *report the amount due to either party.* It mentions no condition ; nor is there anything in the nature of the proceeding or the analogy of awards or verdicts, which would warrant the referees in thus throwing off the responsibility committed to them by the law. They might as well report the facts, and say they could not find one way or the other, and leave the whole open. Indeed they have here come little short of that. A jury may find a special verdict, and refer the law to the court ; but they cannot make as many alternatives as they please. They find the facts ; and say, if on these the court is for the plaintiff (in the language of the issue) then we find for him ; if otherwise, then for the defendant. But in no case can they state merely the evidence which *came before them, and demand [ *23 ] that the court should find the facts which go to make up the question of law. The report is in nature of a verdict subject to the opinion of the court below on a case. But such can never be noticed as part of the record on a writ of error. An issue having been joined, it could be determined only by a verdict or report of referees. There being no verdict, and the report being defective in substance, probably no judgment could be rendered on an entry upon the record in the form before us. But I advert to the defect, merely because we do not wish to be considered as sanctioning.

this mode of reporting. The objection to the form was not made on the argument, though the attention of counsel was called to it. Probably the form was adopted by consent. At any rate, no point was made upon it before us; and it might by violating the understanding of the parties, were we to reverse the judgment, and send down the cause for review on a ground not even hinted in any way; inneed expressly waived by the only party who could object. The forms of business in the court where the cause is pending, are many times mere creatures of practice; and consent will even take away error, if the objection do not reside in a want of jurisdiction. A party may always waive a law which is for his own benefit. The whole matter seems to have been conducted in analogy to a proceeding once very common in this court: a verdict subject to the evidence presented by a case on which this court pronounced as a jury. But the verdict was then always received and entered on the record as a general one. The condition on which it was received never appeared there; nor was the special case alluded to in any way. An entry of the condition would undoubtedly have been cause for reversal on error. We cannot object to any other court adopting the like practice, either in respect to verdicts or reports; though it was found so inconvenient here that we narrowed it by a general rule requiring the case to be as certain as a special verdict. But when a record comes here on error, it must present a definite verdict or report. The court of original jurisdiction, on a case subject to their opinion, exercise the [ *24 ] *right of entering the verdict or report in that way, as the language of the jury or referees, although in fact it be only their own conclusion. So a case is sometimes made by consent, subject to be turned into a special verdict or bill of exceptions; and it is accordingly moulded and entered of record as the language of the jury or as embodying the decisions of the circuit judge. The record before us, were we to hold it defective, might, and we may infer from the course taken, would be amended and put into regular form by the court below.

So much for the mode in which the matter before us is presented. It is entirely clear that we cannot notice the point raised as to the *statute of limitations.* It is impossible to conjecture with any safety, or even probability, that it was raised. The only hint as to the credits given by the plaintiff, is in that part of the case where the defendant abandoned all claim to credit or set off, without saying one word of the purpose he had in view. His very object, perhaps, was, to obscure the bearing it might have at the hearing, and present it for the first time on error brought.

I think it also quite certain, on the principles stated, though the conclusion is not so direct, that the points decided by the referees on admitting or denying evidence adduced to prove the qualifications of the plaintiff below, are not sufficiently stated. But suppose I am mistaken, and it is our duty to examine their decisions, let us see to what they amount.

In the first place, I doubt much, whether the defendant below after re-taining the plaintiff as a physician, and accepting his services as such,' could call upon him in the first instance, to prove a regular *license.* In other like cases the presumption is against the defendant. It is so as between attorney and client, in a suit for services performed under a retainer. *Pearce* v. *Whale,* 7 *Dowl. & Ryl.* 512, 515, *per Bayley, J.* 5 *Barn. & Cress.* 38, *S. C.* There, if the objection sound in the fact that the plaintiff was never admitted, or that his admission has become inoperative, it lies with the de-fendant to show it. *Id. ; and see Berryman* v. *Wise,* 4 *T. R.* 566 ; *and other cases,* 1 *Phil. Ev.* 227, *\*Cowen & Hill's ed.* [ \*25 ] Beside, the contrary would be doing great violence to the presump-tion that no man will transgress the command of a positive law. The plain-tiff had practised some forty years at least ; for much of this period, there was a penalty collectable of any one who practised without a license ; and such an act was, for the period, contrary to the statute. He could not collect the wages of his practice. Where the question does not arise di-rectly on indictment or action for violating a statute which requires a license, but comes in collaterally as here, the books are very strong that you cannot question the fact of there being a license until you show by negative proof that there was none. *Pearce* v. *Whale,* already cited, went on that principle. So did quite a number of cases cited in 1 *Phill. ut sup. and in the note to that ed. p.* 298. In *Smith* v. *Taylor,* 4 *Bos. & Pull.* 196, two of the judges held that a slanderer calling the plaintiff, Dr. Smith, and imputing not a want of degree but of qualification as a physician, could not call upon him in an action for the slander to prove his degree, especially as the defend-ant had, as an apothecary, followed the directions of the plaintiff. The time during which the plaintiff had practised was also considered material. *Vide. also Combe* v. *Pitt,* 3 *Burr.* 1586 ; and *Regg* v. *Cargenven,* 2 *Wils.* 395.

But if the plaintiff be put to the strictest proof, how will he then stand ? He produced a regular license under the act of March 23d, 1797. 3 *Greenl.* 417, § 1. That act required him to produce satisfactory evidence to some judge of the common pleas of this state, or other officer mentioned, that he had practised physic, or surgery, or both, for the term of two years previous to October 1, 1797, or satisfactory evidence that he had studied, &c. It al-so required him to obtain a certificate of such satisfactory evidence, from the officer, under his hand and seal, file it with the clerk of the county where he resided, and take a certified copy subscribed by the clerk ; otherwise he in-curred a penalty of $25 for every act of professional practice. The license produced was perhaps not strictly formal ; but no defect was spe-cifically pointed out. It is said, however, *\*non constat* that *Si-* [ \*26 ] *mon Veeder* was a judge when he made the certificate of Septem-

ber, 1797. Of this objection we now hear for the first time. Had it been raised before the referees, doubtless the fact of his being a judge would have been shown, as it might have been, by evidence *aliunde ; Vide per Denman, C. J. in Collins* v. *Carnegie,* 1 *Adolph. & Ellis,* 695 ; or, if raised in the court below, the original certificate was among their records ; and the official authority of Veeder might have been proved, or so well known as not to be questioned. This shows how important it is, that we should have the points before us which were raised and decided by the court, with the ground of the decision. The mode of proof was not questioned ; and taking Mr. Veeder, as we must, for a judge of the Montgomery common pleas, the certificate was well enough in point of substance. This was preceded by an unofficial certificate that the plaintiff was a member of the county society formed in 1806, under the statute of that year, *ch.* 138, § 1, revised and re-enacted, 2 *R. L. of* 1813, *p.* 219. See the note there. In 1818, *Session Laws of that year, ch.* 206, the act of 1813 was amended, and, among other things, every practitioner of medicine was required to attach himself to the medical society of his country, by lodging his certificate with the president. § 7. What consequences should follow the omission is not declared. The unofficial certificate of 1820 was produced in order to show that the plaintiff had complied, as I suppose, with the then last statute. The referees appear very properly to have disregarded both of these last mentioned certificates. But all were referred to the court, together with the presumption that he was a physician in regular standing, and properly connected, arising from the parol evidence. By this he appeared to have been, *de facto,* a member of his county society for a number of years. The regular evidence of membership under the act of 1806, in the absence of any statutory provision, would, perhaps, have been the entry of his name as a member in the books of the corporation, the genuineness of the entry being first established. This [ *27 ] would certainly be evidence as between the corporators : and *not being adduced to show a corporate right against a stranger, but only *res gestæ* in forming the corporation, it would probably come within the case of *Highland Turnpike Co.* v. *M'Keon,* 10 *Johns. R.* 154. The certificate verifying the original formation of the society, required by the statutes to be filed with the county clerk, might also have been evidence, as that should, and doubtless did, contain the names of those who convened. But the plaintiff's name being there, would depend on the question whether he was present at the organic meeting, or was afterwards admitted. Under the act of 1818, the certificate required to be filed by the member himself with the president, would have been perhaps the only evidence. The certificates produced to the referees were not evidence at all, unless there be some statute giving them a greater effect than they have by the common law. We were referred to none such, nor are we aware of any. I speak of the certificates of

1806 and 1820. I do not perceive why it was not competent to prove, as was done, membership under the acts of 1806 and 1813, by showing that the plaintiff had long been in fact a member of the corporation, participating in its transactions. Neither of these statutes, that we are aware, requires any recorded act of membership as essential to admission. That was reserved for the amendatory act of 1818. Previous to that a few coming together and acting, and filing a certificate of proceedings : in short, going on within the line prescribed by the statutes, constituted a corporation ; the number of which was subsequently enlarged by the accession of members, without any particular form of admission. That the plaintiff below was so qualified to be an original member was shown by the official certificate of Judge Veeder. There was, in that alone, evidence that he had been a regularly licensed practitioner till the act of 1818 ; and it can scarcely be contended that he was disqualified by an omission then to lodge his name with the president. Beside, it is clear that such a mere ceremony should be presumed to have been complied with. An English statute requires an attorney to renew or rather continue his license by taking a certificate of re-admission *annually. It being shown that he had continued to practice, [ *28 ] re-admission was presumed. This was in an action against his client for his fees. *Pearce* v. *Whale,* 7 *Dowl.* & *Ryl.* 512. 5 *Barn. & Cres.* 38, *S. C.* The decision is in point.

But this veteran practitioner having, as he believed, fought his way through the adverse legislation of nearly half a century, it is thought must at all events surrender a part of his claim under the new and point blank provision which found its way among the numerous alterations introduced into the revision of 1830. 1 *R. S.* 450, 2d ed. § 16. This section provides that no person shall practice physic or surgery unless he shall have received a license or diploma for that purpose from one of the incorporated medical societies in this state, or the degree of doctor of medicine, &c. ; or shall have been duly authorized, in a certain form, under the laws of some other state or country. The plaintiff below produced no license or diploma from any society. His certificates, it was objected, were neither of them technically such ; and if a license was necessary, he could only resort to the certificate of 1797. This latter was substantially according to the law of that day, and conferred a right which continued for life; unless divested by some disfranchising statute. The provision in the revised statutes is general. It prohibits all persons practising, unless they have the license required. It is not in terms confined to persons taking licenses after 1806, when, for the first time, medical corporations could be formed ; nor does it expressly say it means not to touch those who were previously licensed. There are classes to whom it may be equitably applied, probably most persons now in practice, for the granting of corporate licenses or diplomas commenced so early as 1806 ; *vide Sess.*

*Laws of that year*, *ch.* 138, § 4 ; and was continued in the subsequent acts. *Vide* 2 *R. L. of* 1813, 221, § 9 *and* § 21. To these latter persons, according to the sound rules of construction, it should be confined ; and we think might be, if necessary. The statute can have ample scope, without working injustice to any one, *Dash* v. *Van Kleeck*, 7 *Johns.* 477, *and the cases there cited*, will be found full to the point that it should be so construed [ *29 ] *as not to interfere with previously vested rights. *Timmerman* v. *Morrison*, 14 *Johns.* 369, is directly in point on a similar general provision in the medical act of 1813. 2 *R. L*, 219, 222, § 12.

But if it were necessary for the plaintiff below to renew his license, *non constat* that it was not done. Such a defect would reach but to the latter part of his practice in the defendant's family. He had been retained long before 1830, and continued to practice generally after that time. The presumption is, therefore, that he had obtained the proper diploma under the revised statutes ; in other words, renewed his license, within the principle of *Pearce* v. *Whale*, before cited. I refer to the case and reasoning of the judges, as in point, that to resist a claim of this kind, for want of qualification, it lies with the defendant to prove clearly that the person whom he retained and who performed the services, has not renewed his license. There he proved it had not been renewed in the king's bench. The court said he must go farther, and prove an omission to renew in the common pleas ; for a renewal in either court entitled the plaintiff to practice. *Vid. also* 2 *Phil. Ev.* 72, 1*st Am. from* 7*th Lond. ed.* Also 1 *Phill. Ev. ed. by Cowen & Hill, p.* 227, *and note, p.* 298. No attempt was made in the case at bar to disprove the fact of the plaintiff having a license. The express statutory declarations running through the various revisions, that any person practising without the proper authority, shall be disqualified to sue and collect any compensation for his services, do not vary the rule of evidence. They were but impositions of an additional penalty. None of the statutes declare on which side the *onus* lies. None of them profess to be statutes of evidence. We are left for that to the common law ; and on looking into adjudications in many cases precisely analogous in principle, it will be found that the defence labored throughout under the difficulty of assuming that the plaintiff was bound, in the first instance, to prove his license affirmatively ; whereas the law presumed that he had one, until the contrary was proved. The rule in such a case as this is more obvious and reasonable in its application, inasmuch as the defendant all along *admitted, by the very act of retaining the plantiff, that he was a regular physician. There was no pretence that, he was employed as a mere Sangrado, like a steam or root doctor. Such, I admit, would have been *prima facie* evidence that he was not legally qualified. *Vide Collins* v. *Carnegie*, 1 *Adolph. & Ellis*, 695. *Pickford* v. *Gutch*, 8 *T. R.* 305, *note. Moises* v. *Thornton, id.* 303.

His account current, sustained by proof to the satisfaction of the referees, partakes too strongly of the *materia medica*, and other professional *indicia*, to leave a doubt that he was called and acted throughout as a regular practitioner. In short this character was openly assumed on one side, and virtually admitted on the other. The case is thus brought plainly within the principle of *Berryman* v. *Wise*, 4 *T. R.* 366, 7, already cited. There the defendant accused the plaintiff of swindling, and threatened to have him struck off the roll of attorneys. He sued in slander, the declaration reciting that he was an attorney. On the trial, upon not guilty pleaded, it was objected that he must prove himself to be an attorney in the usual way, by showing his admission, or proving a copy of the roll. But the court held the slander itself a virtual admission of his character, and that it was, at all events, enough to prove that he acted as an attorney. Buller, J. added : " In actions brought by attorneys for their fees, the proof now insisted on has never been required."

In any view which can be taken of the case, I think the judgment of the court below must be affirmed.

The other judges concurred in the result, without expressing any opinion on the question whether a physician can recover his fees without producing a license to practice.

Judgment affirmed.