(54 App. Div. 33.)

ACCETTA v. ZUPA.

(Supreme Court, Appellate Division, Second Department. October 5, 1900.)

1. TRIAL—OBJECTIONS—SUFFICIENCY.

Where the issue was whether plaintiff was licensed and authorized to practice medicine as a physician, and defendant offered a register of physicians and surgeons as a public record to show that plaintiff was not registered or licensed at the time the services sued for were rendered, it was reversible error to exclude such register on defendant's objection that it was incompetent, immaterial, and irrelevant; such objection being insufficient to raise the question as to the authenticity of a register as a public record.

2. PHYSICIANS—FAILURE TO REGISTER—ACTION FOR COMPENSATION.
    Since no action will lie on a contract made in violation of a statute, no
    compensation can be recovered for medical services rendered by a physi-
    cian who is not registered, as required by Laws 1893, c. 661, providing
    that no person shall practice medicine "unless previously registered and
    legally authorized, or unless licensed by the regents," and declaring that
    any person who violates the provisions of the act shall be guilty of a mis-
    demeanor.
    Woodward, J., dissenting.

Appeal from municipal court, borough of Brooklyn, First district.

Action by Michele Accetta against Terese Zupa. From a judg-
ment for plaintiff and an order denying a new trial, defendant ap-
peals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD,
HIRSCHBERG, and JENKS, JJ.

D. Humphreys, for appellant.
Richard A. Rendich, for respondent.

GOODRICH, P. J.   The plaintiff, a physician, sued for professional
services rendered and medicine furnished by him to the defendant,
in Kings county. He recovered a judgment for $100, and the de-
fendant appeals.

The answer denied that the plaintiff was duly qualified, registered,
and authorized to practice medicine as a physician in the county of
Kings. The plaintiff proved that he was admitted to practice and
graduated in the University of Naples, and had passed an examina-
tion in the University of the State of New York, was licensed in
1896, and had practiced medicine since that time. In McPherson v.
Cheadell, 24 Wend. 15, an action to recover for similar services, Judge
Cowen said (page 24):

"In the first place, I doubt much whether the defendant below, after retain-
ing the plaintiff as a physician, and accepting his services as such, could call
upon him, in the first instance, to prove a regular license.  *  *  *  If the
objection sound in the fact that the plaintiff was never admitted, or that his
admission has become inoperative, it lies with the defendant to show it.
*  *  *  Where the question does not arise directly on indictment or action
for violating a statute which requires a license, but comes in collaterally, as
here, the books are very strong that you cannot question the fact of there
being a license until you show by negative proof that there was none."

In another case (Thompson v. Sayre, 1 Denio, 175), brought to re-
cover for a physician's services, it was held that the plaintiffs were
not bound to prove that they were regularly licensed physicians,
and that the question was on whom the burden of proof lay; citing
McPherson v. Cheadell, supra, as holding that a license is presumed
until the contrary is shown.

The defendant, after proof that the plaintiff was a regular physi-
cian, was bound, under these decisions, to sustain the allegation that
the plaintiff was not licensed and authorized to practice in Kings
county. For this purpose her counsel said: "I offer the Register of
Physicians and Surgeons of Kings County, volume 2, for the pur-
pose of showing that the plaintiff at the time of the rendition of
services was not a registered or licensed physician in Kings county;"
and, this being objected to as incompetent, irrelevant, and immate-
rial, the court sustained the objection, saying: "It makes no differ-
ence as to his being registered or not. The registry of physicians

is only a police measure, and does not affect a physician who is really practicing. An admitted physician may practice his profession. Registry is only a supervision by the police." The exclusion of the record was error. The objection was that it was incompetent, immaterial, and irrelevant. No specific ground for the objection was given. The record was offered as, and stated to be, a public register of physicians and surgeons of Kings county, and this was not questioned. If the plaintiff had desired to raise a question as to its being a public record, his objection should have been specific, and the defendant then would have been called upon to prove the authenticity of the volume by showing the source of its production, and that it was kept by authority. No such objection having been made, we must assume it to have been waived.

The objection that the evidence was irrelevant and immaterial brings us to the main question in the case, and that is the legality of the implied contract to pay the plaintiff for his services as a physician. The court erred in holding that registry was not essential to a recovery. The public health law (Laws 1893, c. 661) provides that no person shall practice medicine "unless previously registered and legally authorized or unless licensed by the regents." Section 149 provides that the license shall be registered in a book kept in the county clerk's office. Section 153 provides that any person who violates the above provisions shall be guilty of a misdemeanor and subject to fine or imprisonment. The exact point involved has been decided in the case of Fox v. Dixon (Sup.) 12 N. Y. Supp. 267, which was an action to recover for medical services. It was not disputed that the physician had not filed the certificate required by chapter 513 of the Laws of 1880, which forbade any person to practice medicine without registry, and declared the person who did so guilty of a misdemeanor. The court said:

"It is a settled principle that one cannot recover compensation for doing an act to do which is forbidden by law and is a misdemeanor. The contrary rule would make an absurdity. It would permit one to hire another to commit a misdemeanor, and would compel the payment of the contract price for doing what the law forbids. Whether this statute is wise or not we cannot examine. It is enacted in the interest of the health of the public, to prevent incompetent persons from practicing as physicians. We must give effect to it. And we cannot permit a recovery of compensation for doing an act which this statute declares to be a misdemeanor. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539."

As this decision is that of the old general term, and has never been questioned, it is controlling upon us as the ruling of a co-ordinate court, and there is abundant authority to the same point. In Wheeler v. Russell, 17 Mass. 258, an action on a note, the consideration of which was the sale of shingles not of a size prescribed by statute, the brief of counsel cited and reviewed the authorities so effectively that Chief Justice Parker, speaking for the court, observed that the cause had been so elaborately argued on both sides, and the points and authorities so thoroughly displayed, that it was quite unnecessary for the court to go into a formal discussion of the case. They were all of opinion that, the shingles for the price of which the note in suit was given having been sold in direct violation of the

statute, the consideration of the promise was clearly illegal, and insufficient to support it. "No principle of law," his honor added, "is better settled than that no action will lie upon a contract made in violation of a statute or of a principle of the common law. The authorities cited by the counsel for the defendant to this point are irresistible. Indeed, the same thing has been frequently ruled by this court in cases which cannot be distinguished, in their principles, from that now before the court, particularly in the cases of Bank v. Merrick, 14 Mass. 322, and Russell v. De Grand, 15 Mass. 35." In 15 Am. & Eng. Enc. Law (2d Ed., p. 939), it is said:

"Where the statute expressly provides that a violation thereof shall be a misdemeanor, it would seem clear that it was the intention of the legislature to render illegal contracts violating such statute. Where the statute contains an express prohibition, and also imposes a penalty for its violation, the rule has been laid down that a contract contravening such a statute would be illegal, unless a contrary intention on the part of the legislature appeared from the whole statute. This rule has not, however, met with universal approval."

The only authority cited under the last sentence is a Vermont case, but we think the general rule, certainly in this state, is as stated in the quotation. For this reason the judgment should be reversed.

Judgment reversed, and new trial ordered; costs to abide the event. All concur, except WOODWARD, J., dissenting.