### OTTAWAY v. LOWDEN.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

PHYSICIANS AND SURGEONS—LICENSE TO PRACTICE—IMPERFECT REGISTRATION—CURATIVE ACT—NOT RETROACTIVE.

    Laws 1880, c. 513, § 4, provides that a person who holds a medical diploma from a school in another state may be registered to practice in this state on securing the approval of his diploma by the faculty of an incorporated medical school of this state and furnishing such other qualifications as they may require, and section 3 makes a violation of the act a misdemeanor. Laws 1893, c. 661, § 148, declares that a registration which is not legal because of some unintentional omission may be validated by obtaining from the regents of the state university a certificate of validation. Plaintiff's registration in 1886 was imperfect because his diploma was not approved by any medical faculty, and in 1899 the board of regents of the state university issued a certificate validating such registration. *Held*, that plaintiff could not recover for medical services rendered in 1894, since at that time he had no license, and to give a retroactive effect to section 148 would allow a recovery for services which constituted a misdemeanor at the time they were rendered.

    Adams, P. J., and Laughlin, J., dissenting.

Appeal from Monroe county court.

Action by John E. Ottaway against Mary Ann Lowden. From a judgment in favor of defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

P. J. Dobson, for appellant.
John Desmond, for respondent.

SPRING, J. The plaintiff was engaged in the practice of medicine in the city of Rochester, and brought this action to recover for

medical services rendered defendant in the year 1894, and claims due $273, besides interest. The nonsuit was granted on the ground that the plaintiff, at the time of the rendition of the services, was not legally qualified to practice his profession, and that is the only issue on this appeal. The plaintiff was graduated from the medical department of the University of Michigan in 1886, and commenced practice in Penn Yan, Yates county, in this state. On the 8th day of October in that year he caused his affidavit to be registered in the office of the clerk of that county, setting forth that he held a diploma from the University of Michigan, and that was his authority for the practice of physic and surgery. In 1889 the plaintiff moved to Monroe county, and, before engaging in the practice of medicine in that county, caused a transcript of the said affidavit to be filed in the clerk's office of that county. On January 10, 1899, the state medical board recommended that the "imperfect registration" of the plaintiff "be made valid," and this was supplemented by the certificate of the said board of regents of date February 2, 1899, reciting the facts presented to the state medical board, and the recommendation that was made by that body, and this certificate was filed in Monroe county February 14, 1899. On the 8th day of November, 1899, an entry was made in the register of the physicians and surgeons in the county of Monroe stating that plaintiff's authority for the practice of medicine was his university diploma "registered in Yates county October 8, 1886, registered on certificate from Yates county." Chapter 513 of the Laws of 1880, which is entitled "An act to regulate the licensing of physicians and surgeons," was in force at the time the plaintiff began the practice of medicine in Yates county. Section 4 of that act prescribes the procedure by which a person coming into the state may be licensed to practice physic and surgery. If he holds a diploma issued to him by a medical school without the state, he can secure the indorsed approval "of the faculty of such incorporated medical college or medical school of this state." There must, however, accompany the presentation of the diploma to the faculty "satisfactory evidence of his good moral character," together with "such other evidence, if any, of his qualifications as a physician and surgeon as such faculty may require"; that is, the faculty of the medical college in this state to which this evidence is presented is the examining board which passes upon his acquirements to engage in the practice of medicine, and they use his diploma as a basis, but their approval must include not alone the diploma, but his qualifications and moral character. There is no pretense that plaintiff ever attempted to comply with the plain requirements of this statute. Chapter 647 of the Laws of 1887 is another act in regulation of the licensing of physicians, but it does not in any way lessen the restrictions of the statute referred to. Subdivision 3 of section 2 permits the indorsement and approval to be made not only by the faculty of a medical school or college in the state, but also by the regents of the state university "on the recommendation of a legally constituted board of medical examiners of this state." Chapter 500 of the Laws of 1890 is amendatory of the act of 1887, and subdivision 3 of section 2 vests the right of approval in the regents of the university alone. Chapter

661 of the Laws of 1893 is an elaborate act pertaining to the public health, and regulating the registration and licensing of physicians and surgeons. By that act the authority to issue licenses still rests with the state board of regents, and its permission is an indispensable prerequisite to engaging in the practice of physic and surgery. These enactments show an unfaltering purpose to exclude from the medical profession quacks and charlatans who seek to ply their calling without the essential preliminary training. The statute last referred to at section 148 provides that, if there has been an "imperfect registration" through some technical or unintentional omission, the board of regents may, in the manner therein provided, "make valid the previous imperfect registration." It is under this provision that the plaintiff claims he is now duly licensed to continue the practice. Assuming this to be correct, there is no suggestion in the act that this provision is to be retroactive in effect. Such a construction will not be given to the act unless that is the only deduction from its language. Geneva & W. Ry. Co. v. New York Cent. & H. R. R. Co., 163 N. Y. 228–232, 57 N. E. 498; Railroad Co. v. Van Horn, 57 N. Y. 473–477. When the services in question were rendered, plaintiff possessed no license, and had no authority to prosecute his calling. The state board cannot endue him with a cause of action where none existed before. It may do away with the necessity of any further license or registration by injecting life into the papers he has already filed, and give him a "clean bill of health" for the future; but that under this act is the extent of its authority. A license during all this period was necessary to enable the plaintiff to practice his profession. Confessedly, he had none. There is no warrant in the law for the state board to determine that he in fact during all this period was licensed to practice. Section 3 of chapter 513 of the Laws of 1880, above mentioned, makes a violation of the provisions of the act a misdemeanor. A similar provision is contained in the cognate statute (Laws 1887, c. 647, § 6; Laws 1893, c. 661, § 153). The agreement with the defendant, therefore, is void, and no recovery can be had. Fox v. Dixon (Sup.) 12 N. Y. Supp. 267. In that case, which is cited approvingly in Accetta v. Zupa, 54 App. Div. 33, 66 N. Y. Supp. 303, the court use this language:

"It is a settled principle that one cannot recover compensation for doing an act to do which is forbidden by law and is a misdemeanor. The contrary rule would make an absurdity. It would permit one to hire another to commit a misdemeanor, and would compel the payment of the contract price for doing what the law forbids. Whether this statute is wise or not we cannot examine. It is enacted in the interest of the health of the public, to prevent incompetent persons from practicing as physicians. We must give effect to it. And we cannot permit a recovery of compensation for doing an act which this statute declares to be a misdemeanor. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539."

During the time these services were rendered the plaintiff was liable to indictment and conviction for practicing physic and surgery without proper warrant. If this act is to be given a retroactive effect, we have the anomalous condition of affairs whereby he can recover for services the rendition of which by him constituted a crime. This interpretation may operate as an injustice in a par-

ticular case, but ,the statutes are a safeguard both to the public and to those engaging in the practice of physic and surgery, and should be rigorously enforced.

Judgment and order affirmed, with costs to the respondent.

McLENNAN and WILLIAMS, JJ., concur.

ADAMS, P. J. (dissenting). The plaintiff brings this action to recover the value of certain services alleged to have been rendered by him as a physician and surgeon in behalf of the defendant. By the undisputed evidence in the case it appears that the plaintiff was graduated from the University of Michigan at Ann Arbor in 1886, and received a diploma from that institution bearing date the 1st day of July, in that year. Shortly after his graduation the plaintiff removed to this state and commenced practicing his profession at Penn Yan, in the county of Yates; and on the 8th day of October, 1886, he filed with the clerk of that county an affidavit in which he stated his age, residence, place of birth, and authority for practicing physic and surgery, as required by section 2, c. 513, Laws 1880. But he omitted to accompany such affidavit with the indorsement of the faculty of an incorporated medical college or school of this state, required by section 4 of the same chapter, in consequence of which the affidavit was confessedly insufficient. In the year 1889 the plaintiff removed to the village of Charlotte, in the county of Monroe, and on the 18th day of November of that year he presented to the clerk of that county a certified copy of the affidavit filed by him with the clerk of the county of Yates, and the same was thereupon filed in the office of the clerk with these words indorsed thereon, "Registered also in the county of Monroe." The services which constitute the claim in suit were rendered in the year 1894, and in the year 1899 the plaintiff, having in the meantime discovered that his former registration was imperfect, applied to the regents of the university of this state for a certificate which should cure such imperfection. This application was granted, and upon the 14th day of February, 1899, a regents' certificate or license was filed in the clerk's office of Monroe county. This certificate, which was based upon a recommendation of the state board of medical examiners bearing date the 17th day of January, 1899, reads as follows, viz.:

"Certificate of Board of Regents.

"University of the State of New York.

"The regents of the University of the State of New York hereby certify: That John E. Ottaway, of the village of Charlotte, N. Y., did in the year 1886 present to the county clerk of Yates county, N. Y., an M. D. diploma issued to said Ottaway by the University of Michigan, July, 1886, and that he made the affidavit before the said clerk then required of persons who applied for licenses to practice medicine, and that said affidavit was duly filed in the office of the clerk of Yates county. That thereafter, on the 18th day of Nov., 1889, the said John E. Ottaway presented to the clerk of the county of Monroe, N. Y., a certified copy of the affidavit filed by him with the clerk of Yates county, who indorsed thereon the words, 'Registered also in the county of Monroe.' That said attempted registration of Dr. Ottaway in each of the said counties was invalid for the reason that he had not exhibited his diploma to the faculty of some duly-incorporated medical school or college in this state, and received from them an indorsement of approval, and has not presented his diploma, with such indorsement, to the county clerk of Yates county. That such omission was wholly unintentional. We further certify that Dr. Ottaway

had all of the other requrements prescribed by law at the time of his imperfect registration, and would have been entitled to be legally registered. We also certify that proofs of the foregoing facts have been submitted to the state board of medical examiners, and that they have unanimously recommended that the imperfect registration of said John E. Ottaway in the counties of Yates and Monroe be made valid.

"In witness whereof, the seal of the University of the State of New York is hereunto affixed this 2nd day of February, 1899.

"[Seal.]　　　　　　James Russell Parsons, Jr., Deputy Secretary.

"Certified by Herbert J. Hamilton, Examiner.

"[Ten cent revenue stamp.]

"Filed February 14th, 1899, Monroe county."

—And was issued pursuant to section 148 of chapter 661 of the Laws of 1893, known as the "Public Health Law," which also provides, among other things, that:

"On receiving from a state board an official report that an applicant has successfully passed the examination and is recommended for licenses, the regents shall issue to him, if in their judgment he is duly qualified therefor, a license to practice medicine. * * * If any person whose registration is not legal because of some error, misunderstanding, or unintentional omission shall submit satisfactory proof that he had all the requirements prescribed by law at the time of his imperfect registration, and was entitled to be legally registered, he may, on the unanimous recommendation of a state board of medical examiners, receive from the regents, under seal, a certificate of the facts, which may be registered by any county clerk, and shall make valid the previous imperfect registration."

As already stated, it is conceded that the plaintiff's attempted registration in 1886 was imperfect, but it appears that at that time he possessed all the requirements prescribed by law to entitle him to be legally registered, and this fact is certified to by the regents in their certificate. There is not a shadow of pretense that the plaintiff has designedly evaded the law, or in any wise acted in bad faith in his attempt to register within this state. Neither is it claimed that he is not sufficiently qualified by education and experience to entitle him to practice his profession; and, such being the case, the sole question to be determined, it seems to me, relates to the effect to be given to the concluding paragraph of section 148, above quoted, and that is whether or not it is retroactive in its operation. In considering this question it must be borne in mind that the statute relating to and regulating the practice of medicine within this state is highly penal in its nature. It not only prohibits a person who does not conform to its requirements from practicing his profession, however well qualified he may be to do so, but it renders him liable to fine and imprisonment. Manifestly, therefore, within well-accepted rules of construction, it is a statute which must be construed liberally in favor of the plaintiff. Whitaker v. Masterton, 106 N. Y. 277, 12 N. E. 604; Raynard v. Chase, 1 Burrows, 2–6. With this rule in mind, it seems to me quite plain that the only construction to be given to the provision now under consideration is that the legislature intended to afford to persons who were in fact duly qualified to practice medicine, but who had innocently and unintentionally omitted to comply with the requirements of the law, an opportunity to rectify such omission upon furnishing satisfactory proof that they possessed all the necessary requirements at the time of their imperfect registration. This much the plaintiff has unquestionably done, and in a certificate recit-

ing the fact the state board of medical examiners have unanimously recommended that he should. receive from the regents a certificate thereof, under seal.   This was subsequently obtained, and, when registered, it constituted a full and complete authority or license to practice in this state.   Now, what is the effect of such a certificate upon the one which preceded it?   Did it simply authorize the plaintiff to practice his profession in this state from the time of its filing?   If so, it seems to me that the legislature could have given expression to such an intention in much simpler and more satisfactory language than it has employed.   But, as I read it, the statute declares something more than this, and something which gives to it quite a different meaning from the one contended for; for it says that when the regents' certificate is registered by any county clerk it "shall make valid the previous imperfect registration," or, in other words, that it shall give life and validity to something which theretofore was imperfect and invalid.   As has been shown, the plaintiff made an attempt to register in the year 1886, which, although ineffectual because of its failure to comply with the requirements of the law, was nevertheless a registration; and when life and validity were infused into that registration by subsequent legislative enactment, it must, I think, within the plain terms of the statute, have been perfected and made valid as of its original date.   This precise question has recently been under examination in a well-considered opinion by a jurist of conceded ability, and the conclusion reached by him is one which commends itself to my approval, and one which, if adopted by this court, as I think it should be, would necessarily lead to a reversal of the judgment appealed from.   Mayor, etc. v. Bigelow, 13 Misc. Rep. 42, 34 N. Y. Supp. 92.   Entertaining this view, I am unable to concur in the opinion of Mr. Justice SPRING.

LAUGHLIN, J., concurs.