NATHAN HANDLER, Plaintiff, *v.* PETER DOELGER BREWING CORPORATION, Defendant.

Supreme Court, Special Term, Kings County, January 29, 1940.

*Weisman, Celler, Quinn, Allan & Spett* [*Murray C. Spett* and *Edmund P. Silver* of counsel], for the plaintiff.

*Chadbourne, Wallace, Parke & Whiteside* [*James K. Crimmins* of counsel], for the defendant.

FROESSEL, J. Plaintiff challenges the legal sufficiency of the affirmative defense contained in the answer herein, under subdivision 6 of rule 109 of the Rules of Civil Practice. The complaint alleges, among other matters, an agreement between the parties whereby defendant employed plaintiff to render certain services in obtaining new customers for defendant's product, and retaining old ones; that as a result of said services at least 25,000 half barrels of beer were sold; that plaintiff was wrongfully discharged; and that there is due him under the agreement a balance of $18,443.75. The answer consists of a general denial and asserts the following affirmative defense:

" 2. The agreement alleged in the complaint, if made, was contrary to the provisions of Section 93, paragraph 1 of the Alcoholic Beverage Control Law of the State of New York in that by its terms plaintiff was a solicitor of beer, an alcoholic beverage, and did not have a solicitor's permit to offer beer for sale or to solicit any order in New York State for the sale of beer as required by said Section, and by reason thereof the alleged agreement is illegal, null and void."

For the purposes of this motion plaintiff has agreed, in his counsel's brief, that " it will be assumed that the services rendered by the plaintiff were such as would require a solicitor's permit under subdivision 1 of section 93 of the Alcoholic Beverage Control Law."

Said subdivision 1 of section 93 of the Alcoholic Beverage Control Law, hereinafter referred to as the A. B. C. Law, provides as follows: " No individual shall offer for sale or solicit any order in the State for the sale of any alcoholic beverage irrespective of whether such sale is to be made within or without the State, unless such person shall have a solicitor's permit."

While the act contains no express declaration invalidating a contract between a solicitor, who failed to obtain a permit, and his employer, the manufacturer or wholesaler, it does embody the following applicable penal provisions in section 130:

" 1. Any person who manufactures for sale or sells liquor, wine or beer, without having an appropriate license therefor, * * * shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than two hundred dollars or by imprisonment in a county jail or penitentiary for a term of not more than six months or both. * * *

" 3. Any violation by any person of any provision of this chapter for which no punishment or penalty is otherwise provided shall be a misdemeanor."

The question to be determined here is whether an unlicensed solicitor of alcoholic beverages may recover from his employer compensation for services embraced within the provisions of said subdivision 1 of section 93 of the A. B. C. Law.

It is, of course, elementary that illegal contracts are generally unenforcible, and the rule is not without some exceptions. With regard to the unlicensed sale of liquors, it has been held, long before the enactment of the A. B. C. Law or the National Prohibition Act, that such seller cannot recover against the purchaser. (*Griffith* v. *Wells*, 3 Den. 226.) In that case, Chief Justice BRONSON, writing for the court nearly a century ago, said (at pp. 226–228): " Our excise law does not, in terms, prohibit the sale of strong or spirituous liquors without a license, nor declare the act illegal; but only inflicts a penalty upon the offender. \* \* \* From this it is argued, that although the seller without a license incurs a penalty, the contract of sale is valid, and may be enforced by action. \* \* \* Now I think it quite clear, that in the enactment of our excise law the Legislature looked beyond the mere question of revenue, and intended to prevent some of the evils which are so likely to flow from the traffic in spirituous liquors. If revenue alone had been the object, licenses would have been allowed indiscriminately to all. But the statute forbids a license to any one, whether tavernkeeper or grocer, who is not of good moral character; \* \* \* These regulations were evidently intended to protect the public, in some degree, against the consequences which might be expected to follow from allowing all persons, at their pleasure, to deal in strong liquors. And although the statute only inflicts a penalty for selling without a license, the contract is illegal, and no action will lie to enforce it."

And so from an early day our courts have refused to enforce contracts against public policy, regardless of the rights or equities of the parties as between themselves. " The coercive power of the law is withheld, to compel the performance of any contract, *inter partes*, which has for its object the commission of a public offense or wrong, although not *per se* criminal. \* \* \* The aid of the law is not withdrawn from any consideration of the rights or equities of the parties, as between themselves, but solely 'to prevent an infringement of the public law or policy of the State." (*Sedgwick* v. *Stanton*, 14 N. Y. 289, 292.)

More recently our Court of Appeals has passed upon the question as to whether a plaintiff could recover the balance of the purchase

price of liquor in the absence of the required permit under the National Prohibition Act of October 28, 1919 (U. S. Code, tit. 27, § 46), and the court held that he could not. (*Adler* v. *Zimmerman*, 233 N. Y. 431.) Judge CRANE, speaking for the court, said (at p. 438): " This is not the case where a sale of a commodity is legal except in certain instances; it is illegal except as authorized. * * * No cause of action can arise out of a transaction made illegal by statute. Where a statute prohibits altogether the sale of certain goods not only the agreement for such a sale is invalid but if the sale is made in violation of law the agreed price cannot be recovered." (Citing cases.)

In the case at bar, as in the *Adler* case, the sale of alcoholic beverages " is illegal except as authorized." (A. B. C. Law, art. 8.) And the National Prohibition Act of October 28, 1919 (*supra*), as the A. B. C. Law, prescribes certain penalties for failure to obtain a permit, without expressly providing elsewhere that the contract was void. The *Adler* case was followed by the Appellate Division of the First Department in the case of *Gass* v. *Wetmore* (238 App. Div. 398; affd., 264 N. Y. 663; reargument denied, Id. 704; 265 id. 578; certiorari denied, 293 U. S. 556; rehearing denied, Id. 632) and in the Second Department in *Tench* v. *Lawson* (225 App. Div. 198), as well as in *Boliver* v. *Monnat* (130 Misc. 660; affd., 232 App. Div. 33).

It is common knowledge that the A. B. C. Law was enacted to prevent the recurrence of the evils existing prior to the adoption of the Eighteenth Amendment to the United States Constitution, as well as during its existence. It clearly sets forth the policy of the State as to the sale of alcoholic beverages in section 2 thereof. It is there provided, among other things: " The restrictions, regulations and provisions contained in this chapter are enacted by the Legislature for the protection, health, welfare and safety of the people of the State." Among these restrictions, regulations and provisions is the requirement for solicitors' permits. In this connection it is also common knowledge that prior to the enactment of the A. B. C. Law notorious individuals and groups of individuals were engaged in the business of soliciting customers for the sale of beer on a large scale, with many resulting evils. That the Legislature did not shut its eyes to this situation is manifested by the nature of the regulations it enacted, to the end, as was said in *Gass* v. *Wetmore* (*supra*, at p. 401), " that the authorities might learn with exactitude the person and residence of one to whom a permit to traffic in intoxicating liquors might be issued." Thus section 93 was enacted, providing for a solicitor's permit. Moreover. section 110 requires an applicant for a license to give certain

information under oath, including "A statement that such applicant has not been convicted of a felony." Subdivision 6 of section 103 requires each manufacturer to file with the Liquor Authority an employee's questionnaire for each male person employed, accompanied by the fingerprints and photograph of such employee. Section 126 forbids felons and certain misdemeanants, minors and aliens to "traffic in" (which includes selling [§ 3, subd. 30]) alcoholic beverages. Section 114 forbids the transfer, assignment or pledging of licenses issued pursuant to the A. B. C. Law.

These are not idle gestures by the Legislature, but an earnest attempt to carry out the policy enunciated in section 2 of the A. B. C. Law.

The provisions of said act reveal a legislative intent to exercise a strict control of all traffic in alcoholic beverages "for the protection, health, welfare and safety of the people of the State," and are broad enough, in my opinion, to deprive unlicensed solicitors from recovering compensation allegedly earned in violation thereof. Other courts at *nisi prius* have placed a similar construction upon the act in kindred situations. (*Wallach* v. *Katzowitz*, 171 Misc. 287; *Dobler Brewing Company, Inc.*, v. *Feeney*, 159 id. 173; *Fitzgerald Bros. Brewing Co.* v. *Meyers*, 10 N. Y. Supp. [2d] 968.)

The plaintiff relies principally upon the case of *Rosasco Creameries, Inc.*, v. *Cohen* (276 N. Y. 274). There, one milk dealer sued another for the price of milk sold, and one of the defenses was that the plaintiff had not obtained a license under the Agriculture and Markets Law, and, therefore, the claim was unenforcible. It seems to me, however, that the Court of Appeals itself clearly distinguished that case from *Adler* v. *Zimmerman* (*supra*) when it said (at p. 280): "Little danger to the public health is involved by the sale of milk by unlicensed dealers, the statute itself providing that dealers who have less than 3,000 pounds of milk a month and those selling milk in any quantity in markets of 1,000 population or less, may be exempted from its requirements. This distinguishes the case at bar from those involving health and morals. (*Adler* v. *Zimmerman*, 233 N. Y. 431; *Johnston* v. *Dahlgren*, 166 N. Y. 354; *Accetta* v. *Zupa*, 54 App. Div. 33.)" The instant case has no exemptions and there can be no question that health and morals are involved.

The remaining cases cited by plaintiff are also readily distinguishable. And the fact, as plaintiff points out, that in one instance the A. B. C. Law does declare void a particular kind of contract (§ 101, subd. 1, ¶ d) is by no means controlling. It is there provided that it shall be unlawful for a manufacturer or wholesaler

to enter into any contract with a retailer whereby the latter agrees to restrict his sales to products of the former. It will be noted that only the manufacturer or wholesaler is charged with unlawfulness. If the contract had not been declared " void " and " the licenses of all parties concerned " subjected to revocation, no punishment whatever could have been meted out to the retail licensee.

In the light of the foregoing views the motion to strike out the affirmative defense in the answer is denied.