CLARA E. BROWN, Respondent, *v.* FRANCIS T. SHYNE, Appellant.

**Negligence — malpractice — trial — charge — action to recover for improper medical treatment — chiropractor claiming to possess skill requisite for diagnosis and treatment of disease may be held to skill and care which he claimed to possess — evidence sufficient to sustain finding of negligence — erroneous charge that practice of medicine in violation of law is in itself some evidence of negligence.**

1. Though the defendant held himself out, and the plaintiff consulted him, as a chiropractor and not as a regular physician, where he claimed to possess the skill requisite for diagnosis and treatment of disease, in the performance of what he undertook to do, he may be held to the degree of skill and care which he claimed to possess. Where, therefore, in an action to recover for his negligence, the plaintiff gave testimony in regard to the manner in which she was treated and supplemented it by evidence that the treatment was not in accordance with recognized theory or practice, that it produced the injury which followed and that a person qualified to treat disease should have foreseen that the treatment might have such result, though her testimony was contradicted, the jury might well have resolved the conflict in her favor.

2. It was error, however, for the trial court to charge the jury that it might infer negligence, on the part of defendant, which produced injury to the plaintiff, from the fact that in treating the plaintiff, defendant was engaged in the practice of medicine contrary to and in violation of the Public Health Law of the State. In order to show that the plaintiff has been injured by defendant's breach of the statutory duty, proof must be given that defendant in such treatment did not exercise the care and skill which would have been exercised by qualified practitioners within the State, and that such lack of skill and care caused the injury. Failure to obtain a license as required by law gives rise to no remedy if it has caused no injury.

3. A contention that even if neglect of the statutory duty does not itself create liability, it tends to prove that injury was caused by lack of skill or care, cannot be sustained. Breach or neglect of duty imposed by statute or ordinance may be evidence of negligence only if there is logical connection between the proven neglect of statutory

duty and the alleged negligence. (*Karpeles* v. *Heine*, 227 N. Y. 74; *People* v. *Meyer*, 239 N. Y. 608, distinguished.)
  *Brown* v. *Shyne*, 214 App. Div. 755, reversed.

(Argued January 20, 1926; decided February 24, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 25, 1925, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Leo · O. Coupe* and *James Coupe* for appellant.   The trial court erred in submitting to the jury the proposition that the failure of the defendant to obtain a license to practice medicine and surgery in New York was evidence that defendant negligently performed a chiropractic adjustment on the plaintiff when there was no evidence to show that it was the proximate cause of the injury complained of. (*Clark* v. *Doolittle*, 205 App. Div. 697; *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488; *Weinberger* v. *Kratzenstein*, 71 App. Div. 155; *Hyde* v. *McCreery*, 145 App. Div. 729; *Silman* v. *Lewis*, 49 N. Y. 383; *Kock* v. *Fox*, 71 App. Div. 288; *Brazil* v. *Isham*, 12 N. Y. 9; *N. Y. C. Ins. Co.* v. *Nat. Prot. Ins. Co.*, 20 Barb. 486; *Newell* v. *Salmons*, 22 Barb. 647; *Clark* v. *Post*, 113 N. Y. 17; *Hall* v. *U. S. Reflector Co.*, 30 Hun, 375; *Antowill* v. *Friedman*, 197 App. Div. 230; *Brown* v. *Goffe*, 125 N. Y. 458.)

*William R. Lee* for respondent.   The trial court committed no error prejudicial to defendant in his charge to the jury on the proposition of the effect of his failure to possess a license to practice medicine in New York State on the question of negligence. (*Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488; *Cummings* v. *R. R. Co.*, 104 N. Y. 669; *Donnelly* v. *Rochester*, 166 N. Y. 315; *Meyers* v. *Barrett*, 167 App. Div. 170; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 532; *McRickard* v. *Flint*, 114 N. Y. 222; *Marino* v. *Lehmaier*, 173 N. Y. 530; *Amberg* v. *Kinley*, 214

N. Y. 535; *Beisegel* v. *N. Y. C. R. R. Co.,* 14 Abb. Pr. [N. S.] 29; *Hoffman* v. *U. F. Co.,* 47 N. Y. 176; *Platz* v. *City of Cohoes,* 89 N. Y. 219; *Martin* v. *Herzog,* 228 N. Y. 164.)

Lehman, J. The plaintiff employed the defendant to give chiropractic treatment to her for a disease or physical condition. The defendant had no license to practice medicine, yet he held himself out as being able to diagnose and treat disease, and under the provisions of the Public Health Law (Cons. Laws, ch. 45) he was guilty of a misdemeanor. The plaintiff became paralyzed after she had received nine treatments by the defendant. She claims, and upon this appeal we must assume, that the paralysis was caused by the treatment she received. She has recovered judgment in the sum of $10,000 for the damages caused by said injury.

The plaintiff in her complaint alleges that the injuries were caused by the defendant's negligence. If negligence on the part of the defendant caused the injury, the plaintiff may recover the consequent damages. Though the defendant held himself out, and the plaintiff consulted him, as a chiropractor and not as a regular physician, he claimed to possess the skill requisite for diagnosis and treatment of disease, and in the performance of what he undertook to do he may be held to the degree of skill and care which he claimed to possess. At the trial the plaintiff gave testimony in regard to the manner in which she was treated. She supplemented this testimony by evidence that the treatment was not in accordance with recognized theory or practice, that it produced the injury which followed and that a person qualified to treat disease should have foreseen that the treatment might have such result. Though her testimony was contradicted, the jury might well have resolved the conflict in her favor, and if the only question submitted to the jury had been whether or not this evidence showed that

plaintiff's injury was caused by the defendant's negligence, the defendant could not complain of any substantial error at the trial. Indeed, it would seem that in some respects the rulings of the trial judge may have been too favorable to the defendant.

At the close of the plaintiff's case the plaintiff was permitted to amend the complaint to allege " that in so treating the plaintiff the defendant was engaged in the practice of medicine contrary to and in violation of the provisions of the Public Health Law of the State of New York in such case made and provided, he at the time of so treating plaintiff not being a duly licensed physician or surgeon of the State of New York." Thereafter the trial judge charged the jury that they might bring in a verdict in favor of the plaintiff if they found that the evidence established that the treatment given to the plaintiff was not in accordance with the standards of skill and care which prevail among those treating disease. He then continued: " This is a little different from the ordinary malpractice case, and I am going to allow you, if you think proper under the evidence in the case, to predicate negligence upon another theory. The public health laws of this State prescribe that no person shall practice medicine unless he is licensed so to do by the Board of Regents of this State and registered pursuant to statute * * *. This statute to which I have referred is a general police regulation. Its violation, and it has been violated by the defendant, is some evidence, more or less cogent, of negligence which you may consider for what it is worth, along with all the other evidence in the case. If the defendant attempted to treat the plaintiff and to adjust the vertebræ in her spine when he did not possess the requisite knowledge and skill as prescribed by the statute to know what was proper and necessary to do under the circumstances, or how to do it, even if he did know what to do, you can find him negligent." In so charging the jury that from the violation of the statute

the jury might infer negligence which produced injury to the plaintiff, the trial justice in my opinion erred.

The provisions of the Public Health Law prohibiting the practice of medicine without a license granted upon proof of preliminary training and after examination intended to show adequate knowledge, are of course intended for the protection of the general public against injury which unskilled and unlearned practitioners might cause. If violation of the statute by the defendant was the proximate cause of ·the plaintiff's injury, then the plaintiff may recover upon proof of violation; if violation of the statute has no direct bearing on the injury, proof of the violation becomes irrelevant. For injury caused by neglect of duty imposed by the penal law there is civil remedy; but of course the injury must follow from the neglect.

Proper formulation of general standards of preliminary education and proper examination of the particular applicant should serve to raise the standards of skill and care generally possessed by members of the profession in this State; but the license to practice medicine confers no additional skill upon the practitioner; nor does it confer immunity from physical injury upon a patient if the practitioner fails to exercise care. Here, injury may have been caused by lack of skill or care; it would not have been obviated if the defendant had possessed a license yet failed to exercise the skill and care required of one practicing medicine. True, if the defendant had not practiced medicine in this State, he could not have injured the plaintiff, but the protection which the statute was intended to provide was against risk of injury by the unskilled or careless practitioner, and unless the plaintiff's injury was caused by carelessness or lack of skill, the defendant's failure to obtain a license was not connected with the injury. The plaintiff's cause of action is for negligence or malpractice. The defendant undertook to treat the plaintiff for a physical condition which seemed to require

remedy.    Under our law such treatment may be given only by a duly qualified practitioner who has obtained a license.

The defendant in offering to treat the plaintiff held himself out as qualified to give treatment.    He must meet the professional standards of skill and care prevailing among those who do offer treatment lawfully.    If injury follows through failure to meet those standards, the plaintiff may recover.    The provisions of the Public Health Law may result in the exclusion from practice of some who are unqualified.    Even a skilled and learned practitioner who is not licensed commits an offense against the State; but against such practitioners the statute was not intended to protect, for no protection was needed, and neglect to obtain a license results in no injury to the patient and, therefore, no private wrong.    The purpose of the statute is to protect the public against unfounded assumption of skill by one who undertakes to prescribe or treat for disease.    In order to show that the plaintiff has been injured by defendant's breach of the statutory duty, proof must be given that defendant in such treatment did not exercise the care and skill which would have been exercised by qualified practitioners within the State, and that such lack of skill and care caused the injury. Failure to obtain a license as required by law gives rise to no remedy if it has caused no injury.    No case has been cited where neglect of a statutory duty has given rise to private cause of action where it has not appeared that private injury has been caused by danger against which the statute was intended to afford protection, and which obedience to the statute would have obviated.    It is said that in the case of *Karpeles* v. *Heine* (227 N. Y. 74) this court held that liability *per se* arises from breach of the statute which prohibits employment of a child under sixteen years of age, but in that case this court merely decided that the statute was intended to protect the child against danger arising from its own lack of

foresight in the course of such employment, and that, therefore, an action against the employer by a child unlawfully employed "for injuries arising in the course of such employment and as the proximate result thereof cannot be defeated by his contributory negligence." In that case the court was considering the legal effect of the proven negligence of the child who was unlawfully employed; only upon proof in the present case of negl゙-gence on the part of the chiropractor would any analogy be apparent.

It is said that the trial justice did not charge that plaintiff might recover for defendant's failure to obtain a license but only that failure to obtain a license might be considered " some evidence " of defendant's negligence. Argument is made that even if neglect of the statutory duty does not itself create liability, it tends to prove that injury was caused by lack of skill or care. That can be true only if logical inference may be drawn from defendant's failure to obtain or perhaps seek a license that he not only lacks the skill and learning which would enable him to diagnose and treat disease generally, but also that he lacks even the skill and learning necessary for the physical manipulation he gave to this plaintiff. Evidence of defendant's training, learning and skill and the method he used in giving the treatment was produced at the trial and upon such evidence the jury could base finding either of care or negligence, but the absence of a license does not seem to strengthen inference that might be drawn from such evidence, and *a fortiori* would not alone be a basis for such inference. Breach or neglect of duty imposed by statute or ordinance may be evidence of negligence only if there is logical connection between the proven neglect of statutory duty and the alleged negligence.

Our decision in the case of *People* v. *Meyer* (239 N. Y. 608) is not in conflict with these views. The defendant there was charged with causing death by " culpable negligence." Negligence was shown by independent evi-

dence, but the charge of manslaughter could be sustained only if the defendant's negligence reached beyond the bounds of lack of skill and foresight where civil liability begins to a point where criminal liability is imposed because the negligence is not merely venal but is "culpable," involving fault for which the State may demand punishment. We held that the circumstance that the defendant practiced medicine without those qualifications which the law demands as a prerequisite to practice was relevant and material upon the question whether the defendant's proven negligence was venal or culpable. We did not hold that the absence of license tended to prove negligence itself.

For these reasons the judgments should be reversed and a new trial granted, with costs to abide the event.

CRANE, J. (dissenting). The defendant is a chiropractic practitioner in Utica, N. Y. The plaintiff, a woman about forty-six years of age, in March of 1923, was his patient. Through treatment received, the plaintiff claims to have become paralyzed, and has brought this action to recover damages. A judgment in her favor has been unanimously affirmed by the Appellate Division, which, however, granted leave to the defendant to come to this court, certifying that in its opinion a question of law was involved which we should review. At the time mentioned, Miss Brown had been suffering from laryngitis, and went to the defendant's, Dr. Shyne's office for treatment. She went there nine times. It was the last treatment that was injurious.

The theory of the chiropractics is that most, if not all, diseases come from pressure on the nerves caused by vertebra deviating from the normal. The treatment consists in restoring the vertebra which is out of alignment to its proper place to relieve the pressure. This is done by palpitating the spinous processes and pushing or manipulating the vertebræ into place. The chiro-

practic claims to be able to treat and cure many diseases in this way. One of the defendant's chief experts in this case stated that the treatment consists entirely of adjusting the vertebræ which are found out of alignment to normal position. In this way, he stated, cancer of the stomach and liver can be cured, tuberculosis, smallpox, diphtheria, scarlet fever, diabetes and heart disease. The chiropractic does not believe in the germ theory of disease.

We readily see, therefore, that the chiropractic doctor holds himself out to treat and cure sickness and disease by the readjustment of the spinal column and the proper alignment of the vertebræ.

This was the kind of treatment that the defendant was giving the plaintiff; and the theory accords with the practice, according to the plaintiff's testimony. She says of the ninth treatment, which was the same as the others, but a little harsher: " I lay down on the couch, face downward, and the support was removed from under my abdomen, and he began working on the spine, and from the neck, way down to the waist and back again. He pressed very hard, so that it made me flinch, especially up through the shoulders. One spot was hurt especially bad. It seemed as if it was his thumbs that he was pressing down hard, and that it hurt, it made me flinch. And then he took a hold of my head, both sides of my head, and gave it a very violent turn, twist one way and then back, which gave a very bad snap, more noticeable than any of the other treatments. And it hurt."

" Q. Where was the pain located that you experienced? A. Right from the base of the neck or head, down, midway down the back."

" Q. Had you ever experienced any pain up to that time, in your spinal column before? A. No, sir."

The plaintiff left the doctor's office, returned to her home, and immediately thereafter her arms and limbs became numb and powerless; she was confined to her bed for a period of fifteen weeks, under the care of nurses;

was obliged to wear a brace, and has been partially paralyzed ever since.

The Public Health Law (sect. 161) enacts:

" No person shall practice medicine, * * * unless licensed by the regents and registered as required by this article."

The practice of medicine is defined by section 160 as follows:

" A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

By section 174 any person who, not being then lawfully authorized to practice medicine within this State, and so registered, according to law, shall practice medicine in violation of the article, shall be guilty of a misdemeanor.

The defendant was violating this law. He was practicing medicine in this State without a license. He was guilty of a misdemeanor. (*People* v. *Ellis*, 162 App. Div. 288; *People* v. *Mulford*, 140 App. Div. 716; *People* v. *Meyer*, 209 App. Div. 908, affd., 239 N. Y. 608.)

The plaintiff's complaint, as amended on the trial, alleged the negligence of the defendant, and his violation of the Public Health Law. The defendant upon the trial and his witnesses testified that his treatment of vertebræ alignment was according to the established practice and methods of chiropractors, and that by such treatment it was impossible to cause the plaintiff's injuries. There was some evidence to show that the defendant may have been unusually severe and harsh.

The charge of the court to the jury treated the case as one in negligence, and stated the law as applicable to duly licensed physicians, that is, that they were bound to

exercise that degree of care and skill generally possessed by members of the profession in the locality where the doctor practiced. The defendant's negligence, he stated, would consist in failing to meet this standard. He further stated to the jury the above requirements of the Public Health Law, and charged: " Its violation, and it has been violated by the defendant, is some evidence, more or less cogent, of negligence which you may consider for what it is worth, along with all the other evidence in the case. If the defendant attempted to treat the plaintiff, and to adjust the vertebræ in her spine, when he did not possess the requisite knowledge and skill as prescribed by the statute to know what was proper and necessary to do under the circumstances, or how to do it, even if he did know what to do, you can find him negligent."

This is the part of the charge which is now challenged as being error, requiring a reversal of the judgment. The point is presented that the violation of the Public Health Law by the defendant, and his practicing medicine without a license, had nothing to do with this case; was not competent evidence; and should not have been considered by the jury as some evidence of negligence. With this view I do not agree.

The judge fully and completely charged the jury that the defendant was not liable for any of the plaintiff's injuries unless they were the direct and proximate cause of his acts. The evidence was abundant to prove that the plaintiff's paralysis and injuries resulted from the defendant's manipulation and treatment of her back, neck and head. The jury were justified in finding that whatever he did, whether it were proper or improper, resulted in the plaintiff's painful condition. We start, therefore, the consideration of this point with the fact that the defendant's acts were the direct and proximate cause of the injury. The next question arises as to whether or not the acts were negligent.

As I have stated, the judge charged the jury as if this were the ordinary malpractice case, furnishing for the defendant a standard of the legally authorized physician. It is difficult for me personally to follow this reasoning and the logic of the situation. I think this rule all too liberal to the defendant. What he did was prohibited by law. He could not practice medicine without violating the law. The law did not recognize him as a physician. How can the courts treat him as such? Provided his act, in violation of the law, is the direct and proximate cause of injury, in my judgment he is liable, irrespective of negligence. It seems somewhat strange that the courts, one branch of the law, can hold up for such a man the standards of the licensed physician, while the Legislature, another branch of the law, declares that he cannot practice at all as a physician. The courts thus afford the protection which the Legislature denies.

The judge in this case, however, did not go this far. He charged for the defendant's benefit the ordinary rules of negligence in malpractice cases, and then stated that the violation of the Public Health Law was some evidence of negligence, leaving the whole question to the jury. It is this much milder form of ruling which is challenged. The defendant must be treated, so the appellant claims, as if he were a duly licensed physician, and in this action for damages, resulting from his act, he is only liable if a duly licensed physician would have been liable. Such is the effect of excluding evidence of the defendant's practicing medicine without a license. If it were competent to prove that he were practicing medicine without a license, the corollary must be true, that such evidence may be considered by the jury as bearing upon the question of his negligence.

What is the rule which is to guide us in determining whether a violation of a statute or ordinance is evidence of negligence? It is no answer to say that the statute

**188**     Brown *v.* Shyne.

provides a penalty, and, therefore, no other consequences can follow. Such is not the law. We are to determine it, as I read the authorities, from the purpose and object of the law, and also from the fact whether a violation of the law may be the direct and proximate cause of an injury to an individual. As was said in *Bourne* v. *Whitman* (209 Mass. 155, 166): "It is universally recognized that the violation of a criminal statute is evidence of negligence on the part of the violator, as to all consequences that the statute was intended to prevent. * * * A criminal statute in the usual form is ͺenacted for the benefit of the public. It creates a duty to the public. Every member of the public is covered by the protecting influence of the obligation. If one suffers injury as an individual, in his person or his property, by a neglect of this duty, he has a remedy, not because our general criminal laws are divided in their operation, creating one duty to the public and a separate duty to individuals; but because as one of the public in a peculiar situation, he suffers a special injury, different in kind from that of the public generally, from the neglect of the public duty."

The prohibition against practicing medicine without a license was for the very purpose of protecting the public from just what happened in this case. The violation of this statute has been the direct and proximate cause of the injury. The courts will not determine in face of this statute whether a faith healer, a patent medicine man, a chiropractor, or any other class of practitioner acted according to the standards of his own school, or according to the standards of a duly licensed physician. The law, to insure against ignorance and carelessness, has laid down a rule to be followed, namely, examinations to test qualifications, and a license to practice. If a man, in violation of this statute, takes his chances in trying to cure disease, and his acts result directly in injury, he should not complain if the law, in a suit for damages, says that

his violation of the statute is some evidence of his incapacity.

At this point the appellant cites those cases dealing with the failure of chauffeurs to have a license. The principal case is *Clark* v. *Doolittle* (205 App. Div. 697). There are a number of other cases upon his brief, all of which I have examined. It was the claim in these cases that the failure to have a license to run a car absolutely prevented all recovery by the driver for injuries received, although the lack of the license had nothing whatever to do with the defendant's negligence. It is self-evident that the violation of a statute must have something to do with the case; that it must in some way bear upon proximate cause. Even in the *Doolittle* case it was said: " The fact that the driver was at the time engaged in a violation of some law may have had an important bearing upon plaintiff's right to recover. It may be evidence against him  *  *  *  and if the fault lay in such violation may prevent recovery." All the case decided was that such violation was not an absolute bar.

But to proceed with the main discussion. The Public Health Law was intended to guard individual members of the public from the injuries which might result from resorting to unexamined practitioners. The violation of the law in this case has brought about the very thing which the Legislature has tried to prevent. In *Dent* v. *West Virginia* (129 U. S. 114, 122) the United States Supreme Court said regarding these Public Health Laws:

" Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be able to detect readily the presence of disease, and prescribe

appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he po...sesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the State to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified."

These words seem quite appropriate to our present Public Health Law. The defendant held himself out as a doctor, able to cure laryngitis. He had an office where his name appeared, as though he were a duly licensed physician. The plaintiff could not tell whether or not the doctor was licensed according to the Health Law; she was not obliged to look up the records before going to him; nor was she expected to understand all the requirements of the Regents. She was one of that public which the law sought to protect by declaring that the so-called doctor was forbidden to do the very thing he did do, and which resulted in injury. Proximate cause in connection with the violation of a city ordinance was before the court in *Monroe* v. *Hartford Street Ry. Co.* (76 Conn. 201). The court said: " It is apparent that the illegal act was not necessarily a mere independent concomitant or condition of the collision, but might well be a contributing cause, and might be, according as the jury should find the attendant or surrounding circumstances, a proximate cause of the injury. ' Cause ' and ' consequence ' are correlative terms. One implies the other. When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result."

In recent times the difficulty with these statutes in the courts has been to determine whether the violation

was negligence *per se,* or only some evidence of negligence. I have not been able to find any case where the violation of a statute or an ordinance was not at least some evidence of negligence, where the violation was the direct and proximate cause of the injury, that is, that the act done resulting in injury, was prohibited, and the aim and purpose of the statute or ordinance was to prevent such injuries by such prohibition. In *Willy* v. *Mulledy* (78 N. Y. 310) the charter of the city of Brooklyn imposed a duty upon the owners of tenement houses to have fire escapes thereon. It was said that where a statute imposes a duty upon a citizen, any person having a special interest in the performance thereof may sue for a breach causing him injury. In *Massoth* v. *Delaware & Hudson Canal Co.* (64 N. Y. 524) the violation of a city ordinance regulating the speed of trains through the city was taken as some evidence of negligence.

A statute of Colorado required the operators of coal mines to fence the ground around their slack coal so as to prevent loose cattle or horses from having access to such slack pile. A child strayed on an unfenced slack pile, and the owner was held liable. (*Union Pacific Railway Co.* v. *McDonald,* 152 U. S. 262.) The court said: " Primarily, that statute was intended for the protection of cattle and horses. But it was not, for that reason, wholly inapplicable to the present case upon the issue as to negligence. * * * ' The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery.' The nonperformance by the railroad company of the duty imposed by statute, of putting a fence around its slack pit, was a breach of its duty to the public, and, therefore, evidence of negligence, for which it was liable in this case, if the injuries in question were, in a substantial sense, the result of such violation of duty."

The same thing holds true here. The defendant was under an obligation, a command, a duty, not to practice medicine. By failing to heed this command and duty plaintiff received injury. The statute and his breach is at least some evidence of negligence. ˙To the same effect we have *Fluker* v. *Ziegele Brewing Co.* (201 N. Y. 40); *McRickard* v. *Flint* (114 N. Y. 222).

In his dissenting opinion in *Marino* v. *Lehmaier* (173 N. Y. 530, 540) Judge O'BRIEN mentions a number of violaˌ tions of statutes and ordinances which would not be considered evidence of negligence in the particular case for the reason that the violation of such ordinance or statute did not constitute the proximate cause of the accident, that is, was in no way the cause of it. Quoting from Thompson on Negligence, he gives the rule to be applied, as follows: " And it may be stated as a general proposition, though there may be difficulty in some cases in applying it, that the violation of a statute or municipal ordinance is not of itself a cause of action grounded upon negligence in favor of an individual unless the statute or ordinance was designed to prevent such injuries as were suffered by the individual claiming the damages and often not then, the question depending upon judicial theories and surmises." The Public Health Law was designed to prevent such injuries as were ˌsuffered by the plaintiff in this case, through the illegal practice of medicine. Judge O'BRIEN cites the instances of taking fish out oℨ season, of smuggling, as not preventing a recovery for injury inflicted upon the violator. Within this category may be placed the instance of a person injured through negligence while violating the Sunday Law. (*Platz* v. *City of Cohoes*, 89 N. Y. 219.) Likewise, the failure to register an automobile was in no way the cause of an accident, and did not prevent recovery for another's negligence. (*Hyde* v. *McCreery*, 145 App. Div. 729.)

We now come to three cases holding that the violation of statutes created negligence *per se*. *Amberg* v. *Kinley*

(214 N. Y. 531) related to the Labor Law (Cons. Laws, ch. 31), which required fire-escapes on factory buildings. The action was for death caused in a fire, where the factory had no such fire-escapes. This court said: "In a suit upon a cause of action thus given by statute, it is not necessary for the plaintiff to prove negligence on the part of the defendant, because the failure to observe the statute creates a liability *per se*, or, as is otherwise and with less accuracy sometimes said, is conclusive evidence of negligence. * * * Whether a statute gives a cause of action to a person injured by its violation, or whether it is intended as a general police regulation, and the violation made punishable solely as a public offense 'must to a great extent depend on the purview of the Legislature in the particular statute and the language which they have there employed.'"

In my judgment there can be no doubt as to the intent of the Legislature in passing the Public Health Law as herein stated by me. It was to prevent injury to people from ignorant and incompetent practitioners, unqualified men. No one can practice unless examined and licensed. That the danger was one to be guarded against; that such legislation was necessary, is apparent in this case.

*Karpeles* v. *Heine* (227 N. Y. 74) also related to the Labor Law, which provided that no child under sixteen years should operate a freight or passenger elevator. Here was a prohibition disqualifying certain persons from doing an act, in the same way that the Public Health Law disqualifies unlicensed persons from practicing medicine. This court held the case one of liability *per se*, following *Amberg* v. *Kinley* (*supra*).

*Martin* v. *Herzog* (228 N. Y. 164) related to the Highway Law (Cons. Laws, ch. 25) requiring lights on wagons after sundown. We held that the unexcused omission of the statutory signals was more than some evidence of negligence; it was negligence itself.

13

In view of these authorities, I am convinced that the plaintiff in this case was a part of that public for whose benefit the Public Health Law in this particular was passed. It was to prevent injury to such as she that the Legislature forbade the unlicensed practice of medicine. The plaintiff was injured through the defendant's disobedience of the law. He was treating her for laryngitis by pushing her vertebra. In pushing her vertebra and twisting her head, that is, by doing the very thing the law said he must not do, he caused paralysis. Thus by these authorities, the plaintiff could prove in connection with his acts that he was practicing medicine without a license, and such violation was, to say the least, some evidence of negligence. This is as far as the trial judge went in charging the jury. Personally, I am of the opinion that where an injury is the direct and proximate result of practicing medicine without a license, a recovery can be had, as for an act negligent *per se;* but we do not need to go so far in this case.

Could the defendant in this case have sued the plaintiff for his services, and recovered? Clearly he could not have maintained such an action. (*Steed* v. *Henley,* 1 Carr. & P. 574; *Allison* v. *Haydon,* 4 Bing. [C. P.] 619; *Accetta* v. *Zupa,* 54 App. Div. 33, 35.) "We cannot permit a recovery of compensation for doing an act which this statute declares to be a misdemeanor."

We have recently had a case in this court where these principles have been applied (*People* v. *Meyer,* 209 App. Div. 908; affd., 239 N. Y. 608). The defendant was there prosecuted for manslaughter, in causing the death of a child about five years of age, through his culpable neglect. The defendant was a chiropractor, and he sought to treat the child for diphtheria. The treatment was the same as given Miss Brown in this case — that is, by the manipulation of the spinal cord. The child died. The defendant was not a licensed physician.

If the defendant was to be measured simply by the

standard of licensed physicians, or of his own school, the Public Health Law had nothing to do with the case. Negligence is negligence (the same in civil as in criminal proceedings), and culpable negligence is merely accentuated negligence. The defendant's negligence had to be proved. The prosecution did not rest with merely showing that the defendant was neglectful from the licensed physician's standpoint. The People proved his acts and omissions, and *also* the fact that the Public Health Law had been violated, that is, that the defendant was illegally practicing medicine. The judge made this an important part of his charge, for he read to the jury section 160 of the Public Health Law, and said: " I charge you, gentlemen, that the practice of chiropractic is practicing medicine under this law as I have read it to you." He then read section 161 of the Public Health Law, and continued as follows: " Now, gentlemen, the charge in this case is not that the defendant violated the provisions of this law. I want that clearly in your minds. It is not brought on that theory. The defendant is not brought into court and is not on trial now for practicing in violation of this statute, for which another penalty is prescribed. That is an entirely separate and distinct offence. The charge in this case is culpable negligence, under the law as I have read it to you; and in connection with that and in reaching your conclusions and coming to your decision you may consider this law that I have just read to you.   *   *   *   So, as I have charged you, if the act is in violation of a statute intended and designed to prevent injury to the person and is in itself dangerous — that is, the act itself — and is liable to result in death by reason of omission or commission, and death ensues, then the person may be guilty of culpable negligence."

We affirmed the conviction in that case. The jury were authorized to consider the violation of the statute as bearing upon the question of negligence. In this case we also have the question of negligence, and as bearing

upon it the judge permitted the jury to consider together with all the other facts the practice of medicine without a license.

The ruling was correct, and the judgments below should be affirmed, with costs.

Hiscock, Ch. J., Pound and Andrews, JJ., concur with Lehman, J.; Crane, J., writes dissenting opinion, in which McLaughlin, J., concurs; Cardozo, J., absent.

Judgments reversed, etc.