THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. BENNETT, JR., as Attorney-General of the State of New York; JAMES BYRNE and Others, Constituting the Board of Regents of the University of the State of New York; and FRANK P. GRAVES, as President of the University of the State of New York and Commissioner of Education of the State of New York, Plaintiffs, *v.* EARL S. LAMAN, Defendant.

Supreme Court, Broome County, March 19, 1936.

*John J. Bennett, Jr., Attorney-General* [*Sol Ullman, Assistant Attorney-General,* of counsel], for the plaintiffs.

*Larkin, Andrews & McNaughton* [*Glen N. W. McNaughton, Hervie E. Harris* and *Richard F. Rath* of counsel], for the defendant.

McNaught, J. We are confined on this motion to the allegations of the complaint. The sole question to be considered is whether the allegations of the complaint state facts sufficient to constitute a cause of action. The allegations are to be taken as admitted. (*Baumann* v. *Baumann,* 222 App. Div. 460; *Tracey* v. *Sullivan,* 131 Misc. 553.)

Liberal construction is to be given to the complaint. (*Bown* v. *Ramsdell,* 227 App. Div. 224.) Every intendment and fair inference must be drawn in favor of the pleading. If the plaintiffs are entitled to recover on any theory on the facts set forth in the complaint, the motion must be denied. (*Marie* v. *Garrison,* 83 N. Y. 14, 23; *Posner Co.* v. *Jackson,* 223 id. 325, 330; *Lamb* v. *Cheney & Son,* 227 id. 418, 420; *Dyer* v. *Broadway Central Bank,* 252 id. 430, 432.)

The question of consequence is whether or not the complaint states facts sufficient to constitute a cause of action. We do not regard the other grounds set forth as warranting extended discussion. The action is properly brought and the plaintiffs have legal capacity to bring it. We consider it unnecessary to discuss the other grounds stated.

The complaint is voluminous, containing eighteen pages of matter, and consisting of twenty-nine separate paragraphs. Briefly summarized, the complaint sets forth the official position and capacity of the parties bringing the action in the name of the

People. It then sets forth *in extenso* in effect that defendant for some fifteen years has operated as a chiropractor in the county of Broome, has treated some 20,000 patients, and is practicing medicine without being registered and licensed as required by the Education Law; that defendant has not the educational qualifications to procure a license to practice medicine in the State of New York; that he has not received and does not possess a license authorizing him to practice medicine, physiotherapy, osteopathy, or any branch of medicine in the State of New York; that he is using the name "chiropractor," implying that he is a practitioner of medicine and the public has been deceived thereby; that he is practicing medicine in the guise of a chiropractor for the purpose of circumventing and evading the law; that about the month of February, 1932, defendant treated one O'Neill and prescribed for him; that subsequently, in the year 1932, defendant was arrested on a charge of practicing medicine on said O'Neill; that a trial of the charge was had in the City Court of Binghamton before the city judge and a jury, and defendant was acquitted; that about the month of April, 1935, defendant practiced medically upon one Mrs. Kate Miner; that he was arrested therefor, tried in the City Court of Binghamton before a jury, and acquitted; that there are numerous other persons known as chiropractors now engaged in the practice of medicine in the county of Broome; that some of such persons have been arrested, several tried, and verdicts of not guilty returned by juries. The complaint then sets forth various newspaper articles and pamphlets relative to the prosecutions in the county of Broome. The twenty-seventh paragraph of the complaint alleges that the constituted authorities of the State of New York are powerless to deal with defendant through the criminal courts in so far as his unlawful practice of medicine is concerned, and plaintiff has no adequate remedy at law to prevent such unlawful practice. By the twenty-eighth paragraph it is alleged that repeated criminal prosecutions of defendant for unlawful practice of medicine will make necessary a multiplicity of criminal prosecutions. The twenty-ninth paragraph sets forth that the continuous, habitual and intentional violation of the law by the defendant in practicing medicine without a license, and the continuous diagnosis and treatment of diseases, pains, deformities and physical conditions of men, women and children, in an uninformed and unskilled manner, without possessing the necessary education, professional ability and medical knowledge required by law, "has endangered, impaired and imperiled, and threatens to endanger, impair and imperil the health of the public, has defeated and defeats public policy, has constituted, constitutes

and will constitute an open, public and continuous nuisance in the county of Broome, State of New York, and has been and will be subversive to and has caused and will cause irreparable injury to the health, safety and welfare of the People of the State of New York, and that said public nuisance cannot be caused to cease except by injunctive order in and by a court of equity."

The complaint then asks judgment that the defendant be restrained permanently and pending the action from practicing medicine in any of its forms, maintaining an office for the practice of medicine, holding himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, from practicing chiropractic in the State of New York, from maintaining an office for the practice of chiropractic in the State of New York, and from using in connection with his name the title " chiropractor " in the State of New York.

Article 48 of the Education Law (Cons. Laws, chap. 16) regulates the practice of medicine. Subdivision 7 of section 1250 of the Education Law defines what constitutes the practice of medicine:

" 7. The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

Article 48 of the Education Law provides what shall constitute necessary qualifications to practice medicine, provides for a State Board of Medical Examiners, for admission to examinations, for the examination of applicants for licenses, for the issuance of licenses, for the registration of licenses, and by the provisions of section 1263 provides penalties for failure to comply with the requirements. Under the provisions of this section any person who practices or advertises to practice medicine without being licensed or authorized shall be guilty of a misdemeanor. Such misdemeanor is punishable by imprisonment for not more than one year or by a fine of not more than $500, or by both such fine and imprisonment for each separate violation, and for a second offense shall be punishable by both such fine and imprisonment. (§ 1263, subd. 3.) All Courts of Special Sessions are empowered to hear, try and determine crimes under the article without indictment, and to impose in full the punishment prescribed. Prosecutions are to be by the Attorney-General in the name of the People.

The complaint alleges that these provisions of the Education Law have been violated by the defendant, and that thereby he has committed the crime mentioned and described in article 48 of the Education Law. The complaint sets forth that the defendant has been arrested in two specific instances, charged with such crime, and although tried in a court having jurisdiction before a jury and acquitted, was nevertheless guilty of the crime charged; that the course of conduct of defendant has continued over a long period of time, is being continued, is inimical to the health and welfare of the People, and plaintiffs are unable to enforce the penalties of the law by prosecution for the crime, and because of this fact and that the acts of the defendant constitute a public nuisance, invoke the equity powers of the court to restrain the defendant from doing what the statute prohibits him from doing.

The energy and tenacity of able counsel has presented to the court exhaustive and voluminous briefs citing authorities from many jurisdictions claimed to sustain or to defeat the contentions of the plaintiffs. We find upon examination that many authorities in foreign jurisdictions apparently have countenanced and entertained actions of this character. Many of them, however, are based upon statutory enactments which authorized their institution. We find no authority in the State of New York which may fairly be regarded as clearly holding such an action may be maintained. To seek to analyze and discuss the numerous authorities to which our attention has been called would be useless.

In their inception Courts of Chancery did assume to exercise or attempt to exercise the power of preventing crimes. The attempt to exercise this prerogative rapidly grew less frequent as the usual, customary and ordinary remedy for the punishment of crime became more effective. It is now practically universally held, unless there is express statutory authority therefor, that equity has no criminal jurisdiction, and acts will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes.

The Legislature, within the constitutional limits of its powers, may declare an act criminal and make a repetition or continuance thereof a public nuisance, or it may vest in courts of equity the power to abate such public nuisance by injunction. It is not, however, the province of the court to assume such jurisdiction to itself. It is true that under certain conditions courts of equity will enjoin nuisances or acts which may be criminal, but it likewise must involve some interference, actual or threatened, with property or property rights. This was clearly stated by the United States

Supreme Court in *Matter of Debs* (158 U. S. 564) where the court said: " Again it is objected that it is outside the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offence against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law " (p. 593).

That equity has jurisdiction to abate nuisances is universally recognized. It is equally well settled that the State or the proper public officials representing the People, may institute actions for that purpose in proper cases, but it is not the rule that either the State or an individual may maintain an action in equity in all cases of nuisances. Some nuisances are criminal; others are not. Criminal nuisances are abatable by criminal process, and where this process is adequate, jurisdiction in equity fails, either because adequate legal remedy precludes jurisdiction in equity, or the subject-matter is beyond the scope of equity jurisdiction.

The Legislature has prescribed requirements which must be complied with to entitle an individual to practice medicine. It has likewise prescribed that if the individual does not comply with such requirements he is guilty of committing a crime. It has prescribed a penalty for the commission of the offense. This clearly and unquestionably provides an adequate remedy at law.

The complaint sets forth, and counsel seek to sustain the cause of action upon the ground, that the acts of the defendant constitute a public nuisance which " has endangered, impaired and imperiled, and threatens to endanger, impair and imperil the health of the public," and then by proper language alleges that such conduct constitutes an " open, public and continuous nuisance in the County of Broome, State of New York."

A public nuisance is defined by section 1530 of the Penal Law of the State of New York. It is there provided: " A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or,   *   *   *

" 4. In any way renders a considerable number of persons insecure in life, or the use of property."

By the provisions of section 1532 of the Penal Law a person who commits or maintains a public nuisance is guilty of a misdemeanor, the punishment for which is imprisonment for not more than one year, or a fine of not more than $500, or both. (Penal Law, § 1937.)

Where a person giving chiropractic treatment for a disease or physical condition holds himself out as being able to diagnose and treat diseases, and has no license to practice medicine, he is guilty of a misdemeanor. (*Brown* v. *Shyne*, 242 N. Y. 176; *People* v. *Mari*, 260 id. 383, 387; *People* v. *Ellis*, 162 App. Div. 288; *People* v. *Meyer*, 209 id. 908; affd., 239 N. Y. 608.)

The Legislature has not provided that the practice of medicine in violation of article 48 of the Education Law constitutes a public nuisance, or that civil actions on the equity side of the court can be maintained therefor. " It is no part of the business of this court [a court of equity] to enforce the penal laws of the State, or the by-laws of a corporation, by injunction, unless the act sought to be restrained is a nuisance." (*Mayor* v. *Thorne*, 7 Paige, 261, 264.) " Even if the act were a nuisance the remedy was by indictment, or in equity only at the suit of the People or of some private person who alleged special damages." (*Village of New Rochelle* v. *Lang*, 75 Hun, 608, 609.)

Actions in equity to restrain threatened acts which are likely to result in injury only lie when the threatened act violates a legal right and will cause irreparable damage to a complainant who has no adequate remedy at law. (*Thomas* v. *M. M. P. Union*, 121 N. Y. 45; *People* v. *E. G. L. Co.*, 141 id. 232, 237, 238; *Southern Leasing Co.* v. *Ludwig*, 217 id. 100, 104; *Low* v. *Swartwout*, 171 App. Div. 725; *Robinson* v. *Whitaker*, 205 id. 286, 291.)

If a plaintiff who claims to have been oppressed and injured seeks to restrain an alleged unlawful act against him, such as seeking in a court of equity to prevent the enforcement of statutes or penal provisions, it has been uniformly held in the State of New York that equity will not interfere by injunction to restrain the enforcement of the criminal laws. (*Davis* v. *American Society, etc.*, 75 N. Y. 362; *Delaney* v. *Flood*, 183 id. 323; *Coykendall* v. *Hood*, 36 App. Div. 558; *Alexander* v. *Enright*, 211 id. 146.) The converse of this rule must necessarily govern courts of equity. They cannot be utilized to restrain the enforcement of the criminal law, neither can they be utilized to assume jurisdiction and seek by the exercise of their power to restrain or prevent the commission of criminal acts. (*Matter of Debs, supra; Ex parte Young*, 209 U. S. 123, 162; *Mellen* v. *Brooklyn Heights Railroad Co.*, 87 Misc. 65.)

Chancellor KENT in an early case (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371) clearly laid down the rule which seems to

have been followed in this State. His language (at p. 378) is in point here, viz.: " If a charge be of a criminal nature, or an offence against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this Court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy at law was not sufficiently adequate. Nor ought the process of injunction to be applied, but with the utmost caution. It is the strong arm of the Court; and to render its operation benign and useful, it must be exercised with great discretion, and when necessity requires it. Assuming the charges in the information to be true, it does not appear to me that the banking power, in this case, produces such imminent and great mischief to the community, as to call for this summary remedy."

The decision has been cited and followed in numerous cases, On the point here involved see *People* v. *Ballard* (134 N. Y. 269, 274); *People* v. *Hudson River Connecting R. R. Corp.* (228 id. 203, 223); *People ex rel. Lemon* v. *Elmore* (256 id. 489, 492).

*City of Rochester* v. *Gutberlett* (211 N. Y. 309) is not in conflict with the views herein expressed. In that case an action was brought to restrain violation of a city ordinance regulating the gathering of garbage. The charter of the plaintiff, a municipal corporation, provided expressly that the city had authority to enact ordinances to preserve the health, safety and welfare of its inhabitants, and for such purposes as the interest of the municipality and its citizens required. The charter likewise contained a provision expressly giving to the plaintiff the right to maintain an action to restrain violation of penal and other ordinances adopted pursuant to the authority of the charter. The case is clearly distinguishable. The authority for the action was plainly specified in the charter.

It is our conclusion that for the alleged acts of the defendant in violation of the provisions of article 48 of the Education Law, the plaintiffs have a full, complete and adequate remedy at law; that if the acts alleged constitute a public nuisance the plaintiffs likewise have a full, complete and adequate remedy at law under the provisions of sections 1530, 1532 and 1937 of the Penal Law.

We are of the opinion the facts alleged in the complaint, all of which are assumed to be true in the determination of this motion, fail to state a cause of action of which a court of equity should take cognizance.

The motion to dismiss the complaint upon the ground it fails to state facts sufficient to constitute a cause of action, is granted, with. ten dollars costs of motion to defendant.

Submit order accordingly.