THOMAS M. CORNBROOKS, Respondent, *v.* TERMINAL BARBER SHOPS, INC., Appellant.

First Department, December 16, 1938.

*George W. Whiteside* of counsel [*Ralph D. Ray* with him on the brief; *Chadbourne, Wallace, Parke & Whiteside,* attorneys], for the appellant.

*Van M. Logan* of counsel [*David Mackay,* attorney], for the respondent.

UNTERMYER, J.   On the morning of January 9, 1934, the plaintiff, then fifty-seven years of age, entered the defendant's barber shop at the Hotel McAlpin in New York city.   He ordered a haircut and a shave, following which the barber made use of an electric vibrator on his face as a part of the usual service rendered in all the barber shops in the defendant's chain.   A few months later he instituted this suit against the defendant, claiming that he had lost the sight of his left eye as a result of the negligent operation of the vibrator.

The plaintiff offered the only testimony concerning the occurrences in the barber shop and of the force applied in the use of the vibrator. He was in the chair, his eyes closed, reflecting, as he says, on business matters. He testified:

" I was thinking about that, with my eyes closed, when I felt the barber start some sort of a vibrating machine on my head. He put it around on my hair, and then he brought it down over this eye on to the eye, and down on to the cheek.

" Q. And did you feel any sensation as he passed his hand over your left eye? A. Yes. It was an unpleasant jarring sensation but there was no pain. * * *

" Q. How many times did he pass that over the eye? A. Only the once, as he brought it from my head to my cheek."

The plaintiff offered no proof of the amount of force exerted in the application of the vibrator, except that it caused an " unpleasant jarring sensation." Because he felt no pain, he made no complaint to the barber or the manager. He testified in substance that he did not know whether it was the vibrator or the barber's hand with the vibrator attached to it that passed over his eye. Though he was uncertain as to whether there was a towel over his face, the defendant's proof showed that a large Turkish towel is always applied before the vibrator is used.

Several hours later, while on a bus from New York to Camden, N. J., the plaintiff claims that his vision became clouded and what appeared to be a smudge on his eye glasses persisted in spite of attempts to wipe it away. About a week later he consulted a specialist in diseases of the eye, who found a condition described as " detachment of the retina," which is the inner layer or coat of the eye. After this consultation the plaintiff for the first time associated his condition with the use of the vibrator in the defendant's shop.

The choroid, or next outer coat of the eye, is attached to the retina at only two points and is held in position against the retina principally by the pressure of the vitreous, the jelly-like substance which fills the eyeball. When the retina separates from the choroid the condition is usually followed by a partial or complete loss of vision. It is conceded that the plaintiff was a sufferer from myopia, commonly called nearsightedness, and that such persons are peculiarly susceptible to detachment of the retina. The reason for this is that myopia causes a reduction of the pressure within the eyeball, thereby allowing the retina to separate more readily from the choroid to which it is attached. The physicians who testified for the plaintiff conceded that myopia might result in such a condition without the intervention of any external force or

that a violent sneeze, a sudden jolt and other like agencies might cause detachment of the retina.

The defendant further contended at the trial that the plaintiff's left eye was in other respects diseased for a considerable time previous to January 9, 1934, in that the vitreous content of the eye had become liquid instead of retaining the jelly-like consistency of a healthy eye. The plaintiff and his medical witnesses, however, denied this to be the fact. Dr. Shipman, called by the plaintiff, testified that he had examined the plaintiff's eyes on January 15, 1934, six days after the visit to the defendant's barber shop, and observed the retinal detachment and a moderate degree of myopia or near-sightedness. Dr. Fry, also a witness for the plaintiff, made an examination on January 16, 1934, and found the detached retina within the left eye. He produced notes made in connection with an unsuccessful operation in March, 1934, from which it appeared that the vitreous of the eye was then liquid, having lost its jelly-like consistency to such an extent that it was necessary to abandon the operation. The defendant's medical witnesses testified that the liquid condition of the vitreous, discovered when the operation was attempted, demonstrated the existence of a diseased eye condition which must have existed previous to the plaintiff's visit to the defendant's barber shop, and that this condition caused the detachment of the retina. The defendant was unable, however, at the trial to produce direct proof that at the time of the plaintiff's visit to the barber shop he was suffering from any disease of the eye except myopia.

Two questions are presented: The first, whether there was negligence on the part of the defendant; the second, whether the plaintiff's injury was shown to have been caused by the use of the vibrator in the defendant's shop. We think the plaintiff failed to sustain the burden of proof on both these issues.

In order to succeed on the issue of negligence, it was necessary for the plaintiff to establish that, in applying the vibrator as he did, the barber should reasonably have anticipated some injury to the plaintiff's eye. Yet the record contains no proof to justify such an inference, nor do we think that common experience with such appliances would sustain any such conclusion. Over a period of nine years the defendant had used such vibrators on more than five million persons without injurious results and without a single complaint. To hold that in using the vibrator as he did the barber should have anticipated injury to the plaintiff's sight would attribute to him a knowledge of opthalmology, which few persons are expected to possess. This is particularly true here because the record is entirely consistent with the view that the vibrator was applied to

the barber's hand, which in turn was applied to a Turkish towel covering and protecting plaintiff's face. It is true that the plaintiff offered evidence by qualified professional barbers that good practice required that the vibration be not applied to the eyeball. But this rule or practice was prescribed for reasons of comfort only and not on account of any danger to the eye.

The plaintiff likewise failed to establish that the loss of vision resulted from the use of the vibrator in the defendant's shop rather than from other causes. (*White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131; *Kalinowski* v. *Ryerson & Son, Inc.*, 242 App. Div. 43.) From the record it remains entirely uncertain whether the plaintiff's condition was attributable to the use of the vibrator or to a variety of other strains to which the plaintiff was subjected and which, with equal probability, could have resulted in a retinal detachment. Under these circumstances it cannot be said that the plaintiff has established by a preponderance of proof that the act of the defendant caused the injury. (*Antowill* v. *Friedman*, 197 App. Div. 230.) The finding of the jury in that respect rests upon mere conjecture or surmise.

The judgment and order entered July 17, 1937, should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., GLENNON, DORE and CALLAHAN, JJ., concur.

Judgment and order unanimously reversed, with costs, and the complaint dismissed, with costs.