James G. Turack, Claimant, *v.* The State of New York, Defendant.

(Claim No. 24970.)

Court of Claims, January 22, 1940.

*Simon Schechter* [*David C. Broderick* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Harold Greenstein, Assistant Attorney-General,* of counsel], for the defendant.

GREENBERG, J. On the 10th day of January, 1935, claimant, then about fifty-nine years of age and employed as a carpenter by the State of New York at the Creedmore State Hospital, applied to the hospital for treatment to his right foot which was causing him pain. Dr. Tagliavia, a physician attached to the Creedmore Hospital, examined the claimant and sent him to the physiotherapy department for treatment, where he was treated by a Mr. O'Shaughnessy, an attendant of the hospital. O'Shaughnessy was not the technician in charge nor was he a duly licensed physician. In administering the diathermy treatment to the claimant, O'Shaughnessy applied two straps leading from the apparatus to claimant's right foot, one of which was placed around the ball of his foot and another around the ankle, so that the two straps were only one-eighth of an inch apart. Claimant testified that when the electric current was turned on it burned him and that he told O'Shaughnessy it was burning him terribly, and thereupon the current was reduced and the application continued from ten to twelve minutes; that when the straps were removed there appeared a dark spot on his right foot as big as a dime. Thereafter a second diathermy treatment was administered in the same manner at the Creedmore State Hospital by one Frazier; no burn occurred then as it did upon the first treatment. As time went on the dark spot, which claimant characterized as a burn, grew darker and larger in size, and was treated by physicians at the hospital with mercurochrome. Claimant was thereafter unable to return to work and remained at home until March 5, 1935, excepting for the visits to the hospital for treatment, which was administered by Dr. Tagliavia. The dark spot developed into a raw sore and became softer and spread; on March fifth claimant was examined by Dr. Travers, assistant superintendent of the hospital, who interned him in the hospital until April 19, 1935, on which date claimant returned to his home.

On April 22, 1935, Dr. Combers made his first examination of claimant and found him complaining of pains in his right leg, and upon examination found that the skin was off at the top of the foot and there was a destruction of some of the tissues beneath the skin; that claimant had varicose veins in both legs and some hardening of the arteries and that gangrene had set in claimant's foot. The condition of claimant's foot thereafter grew worse, and on August 19, 1935, he went to the Meadowbrook Hospital and remained there until September 13, 1935, when it became necessary to amputate his right leg about eight inches below the knee.

Claimant seeks to recover for his pain and suffering and for the loss of part of his right leg which were caused by reason of the

carelessness and negligence on the part of the State, its agents, servants and employees, in administering the diathermy treatment to claimant in a careless and negligent manner, and in permitting the attendant, O'Shaughnessy, who was not a licensed physician or technician, to administer such treatment to claimant's foot, as a result of which he sustained the burn to his right foot which resulted in gangrene, necessitating the amputation.

There are two questions presented: *First,* whether there was any negligence on the part of the State or its employees; *second,* whether claimant's injury was shown to have been caused by the manner in which the diathermy treatment was administered to the claimant. We believe that the claimant has failed to sustain the burden of proof on both of these issues.

On the question of negligence, the fact that O'Shaughnessy was not admitted or licensed to practice medicine is not, in itself, evidence of negligence. (*Brown* v. *Shyne,* 242 N. Y. 176; *Cullen* v. *State,* 247 App. Div. 921; affd., 277 N. Y. 541.) Quoting from the decision of Judge LEHMAN in the case of *Brown* v. *Shyne* (*supra,* at p. 181): " In order to show that the plaintiff has been injured by defendant's breach of the statutory duty, proof must be given that defendant in such treatment did not exercise the care and skill which would have been exercised by qualified practitioners within the State, and that such lack of skill and care caused the injury. Failure to obtain a license as required by law gives rise to no remedy if it has caused no injury." Claimant has failed to establish that the diathermy treatment administered by O'Shaughnessy was not proper and that he did not exercise care and skill which would have been exercised by qualified and licensed practitioners within the State. On the contrary, claimant's medical expert witness, Dr. John J. O'Connor, testified that the diathermy treatment, as administered by O'Shaughnessy, with the bands about one-eighth of an inch apart, is the usual procedure in diathermy treatment and that the mere fact that the bands were close together would not necessarily tend to burn.

Claimant likewise failed to establish that his pain and suffering and the amputation of a part of his right leg resulted from the diathermy treatment administered to him in the State hospital rather than from other causes. (*White* v. *Lehigh Valley R. R. Co.,* 220 N. Y. 131; *Kalinowski* v. *Ryerson & Son, Inc.,* 242 App. Div. 43.) It is entirely uncertain from the testimony adduced whether claimant's condition was attributable to the diathermy treatment or to the arteriosclerotic condition of claimant's right leg and which, with equal probability, could have resulted in the gangrene which necessitated the amputation.

It is undisputed that claimant was a sufferer from arteriosclerosis and that such persons are susceptible to gangrene. The physicians who testified on claimant's behalf conceded that gangrene might result without intervention of any external force or burn. Claimant testified that he had pains in his right foot and that he sought treatment at the hospital to relieve such pain and that the diathermy treatment was then administered. He testified that his condition of health was " good as far as I know," and considerable doubt is entertained as to his veracity in view of his admission that varicose veins were visible; the contrary appears, from all of the facts, to be a more logical inference.

Claimant testified that after receiving the diathermy treatment the straps were taken off and there was a dark spot where the straps were on his foot " as big as a dime." Dr. John J. O'Connor, his diathermic expert witness, testified that a burn resulting from a diathermy treatment would produce a reddened area and swelling and probably a bleb or blister; that if the amperage was given for a period of twelve minutes the burn would be quite extensive and would be over the area where the electrodes were, and it would be along the whole foot, and, assuming that the appearance of the spot was just dark and brawny, it could be a bruise or contusion or a tight application from the electrode, and would not necessarily be a fourth degree burn; it could be a circulatory disturbance. " It having been proven that that specific result might come from proper treatment without negligence on the part of the physician, that is, in a case of a hypersensitive person, the mere fact that that result did follow the treatment in this case was in itself no evidence of negligence. The case thus presented was merely one where, according to the proof, the stated result might have followed from the one cause, viz., defendant's negligence, or from another cause, viz., plaintiff's hypersensitiveness; and, therefore, the naked fact of that result was in itself no evidence of the existence of the one cause in preference to that of the other." (*Antowill* v. *Friedmann*, 197 App. Div. 230, 234.) The record is replete with admissions of claimant's witnesses that the type of ulcer and gangrene of which claimant suffered could be produced without a burn and that all fourth degree burns would not produce gangrene and that the condition found on claimant's right foot was such that they could not tell whether the gangrene was the result of an arteriosclerotic condition, or a burn, because when in the sloughing state they are similar in appearance. The fact that the gangrene developed after the diathermy treatment was administered shows only a sequence in point of time and not necessarily one of cause and effect. At best, the matter is left in doubt, and

it is just as probable that the injury was the result of arteriosclerosis as of a burn.

" The law is well grounded that before a plaintiff may recover damages for a personal injury, the burden of proof is upon him to show with reasonable certainty that the alleged condition resulted from the act of the defendant. (*Saumby* v. *City of Rochester*, 145 N. Y. 81; *Ruback* v. *McCleary, Wallin & Crouse*, 220 id. 188; *Grant* v. *Pennsylvania & N. Y. Canal & R. R. Co.*, 133 id. 657; *Cornbrooks* v. *Terminal Barber Shops, Inc.*, 255 App. Div. 522, 525; *Mackey* v. *Interurban Street Ry. Co.*, 115 id. 467, 470, 471; *Maimone* v. *Dry Dock, E. B. & B. R. R. Co.*, 58 id. 383, 386.)   \*   \*   \*

" In the *Saumby* case (*supra*) the Court of Appeals in considering a situation parallel to the one at bar said at page 84: ' The question was one entirely outside of ordinary experience and only capable of being answered by scientific skill, and that answer was adverse to the plaintiff's claim.   There is often, in this class of cases, a tendency to aggravate in the proof the consequences of an injury with a view to enhance the damages, and the tendency is one quite difficult for a defendant to protect himself against.   While a plaintiff should be always allowed in a proper case to show fully the damage which he has suffered, he should not be permitted to prove physical defects, having no known or proven connection with the injury, simply because they manifested themselves at some time thereafter, and then to ask the jury to supply from their imagination the lack of proof.' " (*Hirsch* v. *Safian*, 257 App. Div. 212.)

Under these circumstances it cannot be said that the claimant has established by a preponderance of proof that the act of the State and its employees caused the injury and there can be no recovery. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 id. 90; *Searles* v. *Manhattan R. Co.*, 101 id. 661.)

The claim should be dismissed.

MURPHY, J., concurs.